W. H. BASSETT, Respondent, v. THE WESTERN UNION TELEGRAPH COMPANY, Appellant.

### St. Louis Court of Appeals, March 8, 1892.

1. **Liabilities of Telegraph Companies: TELEGRAMS SENT ON SUNDAY: PLEADING.** If a telegraph company receives a telegram for transmission on a Sunday, but fails to transmit it, it is not incumbent upon the sender in a suit by him for the statutory penalty for such failure to aver that the sending of the telegram was a work of necessity or charity.

2. ———— : ———— : ————. If a telegraph company desires to avail itself of the defense to such a suit, that the sending of a telegram was not a work of necessity or charity, and, therefore, was illegal, it must, owing to the provisions of section 3853 of the Revised Statutes, aver and prove facts taking the case out of the operation of that section, as that it kept its office open on Sunday only for the receipt of telegrams which might lawfully be sent on that day, and that it was induced to send the telegram in question through the false representation of the sender that it was a work of necessity or charity.

*Per Rombauer, P. J., concurring:*

3. **Practice, Trial: AIDER BY VERDICT.** If a material fact is not specifically stated in a petition, but can be supplied by reasonable intendment from other allegations, and if the record, moreover, shows that the trial court could not have arrived at its conclusion without finding each fact, the defect is cured by the verdict.

*Appeal from the Monroe Circuit Court.*

AFFIRMED.

*Charles E. Yeater,* for appellant.

*Rodes, Waller & Rodes,* for respondent.

BIGGS, J.—The first count in the plaintiff's petition is for the recovery from the defendant telegraph

company of the penalty provided by section 2725 of the Revised Statutes of 1889, which reads : " It shall be the duty of every telegraph or telephone company, incorporated or unincorporated, operating any telephone or telegraph line in this state, to provide sufficient facilities at all its offices for the dispatch of the business of the public, to receive dispatches from and for other tele-phone or telegraph lines, and from or for any individual, and on payment or tender of their usual charges for transmitting dispatches, as established by the rules and regulations of such telephone or telegraph line, to transmit the same promptly and with impartiality and good faith, under a penalty of $200 for every neglect or refusal so to do, to be recovered, with costs of suit, by civil action, by the person or persons or company sending, or desiring to send, such dispatch, one-half of the amount recovered to be retained by the plaintiff, and one-half to be paid into the county public school fund of the county in which the suit was instituted ; and the burden of proof shall be upon the company to show that the wire was engaged as the reason for the delay in transmitting such dispatch."

The plaintiff delivered to the defendant's agent at Moberly, Missouri, the following message to be transmitted to Kansas City :

"MOBERLY, Mo., November 17, 1889.

" *To Miss May Eskridge, 2306 Tracy Ave., Kansas City, Mo.*

" Shall call on arrival of the 7:45 train this eve.

" [ Signed ]                     W. H. BASSETT."

It is conceded that this message was accepted, paid for, and not sent. The failure to send was an oversight merely, and not a wilful or intentional neglect of duty.

The second count in the petition was to recover the amount paid by the plaintiff for sending the dispatch, which the defendant admitted it had received. The defendant's answer was a general denial.

The cause was submitted to the court sitting as a jury, and the trial resulted in a finding and judgment for the plaintiff on both counts. The telegraph company brings the case here by appeal.

In the first place the defendant's counsel insists that his objection to the introduction of any evidence under the first count ought to have been sustained. The basis of this objection was that the petition showed on its face that the contract to send the message was made on Sunday, and that, as the pleading did not contain further averments of facts showing that the transmission of the message was a work of necessity or charity, it failed to state a cause of action. The court overruled the objection, and this constitutes the defendant's first assignment of error.

The consideration of this assignment necessarily involves the real defense sought to be interposed to the action. The defendant's contention is that, the contract between the parties having been made on Sunday, there can be no recovery of the statutory penalty for neglecting to send the message, unless the plaintiff averred and proved that its transmission was a work of necessity or charity. If the defendant is right in this, then the assignment of error must be sustained, because under this view the petition did not state a cause of action for the reasons above stated. The rule is that, where the averments in a petition disclose *prima facie* a defense to the cause of action stated, the pleading is bad, unless it contains the averment of additional facts in avoidance of such defense. *Western U. Tel. Co. v. Yopst*, 118 Ind. 248. On the other hand the plaintiff's position is, that whether the sending of the message was a work of necessity or charity is an immaterial question, because the defendant, under sections 3852 and 3853 of the Revised Statutes of 1889, is precluded from urging the alleged illegality of the contract as a defense to the action. The sections referred to read: "Sec. 3852. Every person who shall either labor himself, or

compel or permit his apprentice or servant, or any other person under his charge or control to labor or perform any work other than the household offices of daily necessity, or other works of necessity or charity, or who shall be guilty of hunting game or shooting on the first day of the week commonly called Sunday, shall be deemed guilty of a misdemeanor, and fined not exceeding $50.

"Sec. 3853. The last section shall not extend to any person who is a member of a religious society by whom any other than the first day of the week is observed as the Sabbath, so that he observes such Sabbath, nor to prohibit any ferryman from crossing passengers on any day of the week ; *nor shall said last section be extended or construed to be an excuse or defense in any suit for the recovery of damages or penalties from any person, company or corporation voluntarily contracting or engaging in business on Sunday.*" The latter portion of section 3853, in italics, was added in the revision of 1889, and consequently was in force at the date of the transactions here in controversy.

There can be no doubt as to the reasons for this amendment, or the existing evils which the legislature sought to remove or remedy by the amendment. It is a notorious fact that the common carriers of the state are and have been in the habit of contracting for the carriage of freight or the transportation of passengers on the Sabbath, as if it were a secular day. In actions arising out of such illegal contracts the courts of the state have experienced some difficulty in compelling the carrier to respond in damages for neglect of duty. *Guinn v. Railroad*, 20 Mo. App. 453. In 1888 the Kansas City Court of Appeals, in an action against this defendant to recover the statutory penalty for failure to transmit a message delivered on Sunday ( *Thompson v. Tel. Co.*, 32 Mo. App. 191), decided that defendant was not liable for a violation of the statute,

when it appeared that the message concerned an ordinary business transaction. These adjudications evidently brought about the amendment, and its proper application to such cases will undoubtedly meet the ends of justice. Where common carriers and telegraph companies engage in a general business on the Sabbath, regardless of the fact whether the business done was permitted or prohibited by law, it was the evident intention of the legislature to eliminate from actions. growing out of such contracts all defenses resting on the illegality of the transaction; that is, in telegraph cases, all questions concerning the character of messages. sent. In other words, if railroad and telegraph companies pay no attention to the Sunday law, but proceed with their business on the Sabbath as if it were an ordinary business day, they ought not to be allowed to take the profits, and then compel their patrons to show that their contracts were not avoided by the Sunday law, in order to hold them for a violation of their statutory duty. This is the plain reading of the amendment; therefore, such a defense, in cases like we have here, is *prima facie* unavailable, and can only be made available under the necessary averments and proof by the defendant that its offices were opened on the Sabbath for the purpose of transmitting the messages of necessity *only*, and that it was induced to send the dispatch in question through the false representations of the sender that it was one of necessity, whereas it concerned ordinary business. Under such circumstances only can it be said that the defendant *did not voluntarily engage in the business* within the meaning of the statute. Under this construction it is clear that the defendant's objection to the sufficiency of the petition, and the admission of evidence thereunder, was untenable. If the defendant only kept its offices open on Sunday for the purpose of doing such business as was not prohibited, and the message in question concerned ordinary business, and the defendant was induced to receive the

message through the false representations of the plaintiff that it was a matter of necessity, it was necessary for it to aver and prove these facts. This is the most liberal interpretation possible for a defendant in such a case. We must, therefore, rule the first assignment against the defendant.

Our conclusion concerning the first assignment leaves the defendant without any defense to the action. It was admitted that the message was received and paid for, and the fact that it was not received or sent was not controverted. The plaintiff's evidence also tended to prove that the defendant was engaged in general business on Sunday, and there was no countervailing evidence.

Therefore, under any possible view of the case, the judgment could not have been otherwise than for the plaintiff, and this makes it unnecessary for us to discuss other questions in the case.

With the concurrence of the other judges, the judgment of the circuit court will be affirmed. So ordered.

ROMBAUER, P. J. (*concurring*).—I concurred in the result of the first opinion filed herein, because, while clear that the message was neither a work of charity nor necessity, I thought that section 3853 of the Revised Statutes of 1889 precluded the defendant from interposing the illegality of the contract in defense of the action. To that opinion I still adhere. My associates differed with me on both propositions, but our divergent views led to the same result.

The order sustaining the motion for rehearing distinctly advised the defendant that the point on which the court desired to be further advised was "whether section 3853 of the Revised Statutes of 1889 is applicable to the case at bar *under the facts of the case.*" Although that point was decided in his favor by a majority of the court in the first instance, the order of

re-argument advised the defendant that that decision was not final.

The defendant now claims that, assuming that the section is applicable to a case of this kind, yet the petition is defective because it fails to state that it had *voluntarily* contracted or engaged in business on Sunday. Since the petition does not claim that the message was the work of necessity or charity, why should it aver that its receipt was a voluntary contract on the part of defendant? All contracts are presumed to be voluntary. An involuntary contract is a contradiction in term. Since the statute uses the term voluntary, and is a penal statute, there might be some force in the argument, that a petition which fails to use that exact term might be objectionable for uncertainty, or even subject to demurrer. But since the averment is not an essential averment, because it can be supplied by reasonable intendment from other allegations, the defect, if there is one, is certainly cured by the verdict, when the record distinctly discloses the fact that the court could not have arrived at the result of the trial without finding the fact thus implied.

In the case at bar there was evidence tending to show that the defendant was led to receive the message owing to an indorsement upon the paper containing it, stating that it was a work of necessity. But there was also evidence tending to show that this indorsement was not on the paper when the defendant received the message, and when it was paid for, but that it was subsequently placed upon it as a blind to guard against possible prosecution for the infringement of the Sunday law. On this state of the evidence the court on defendant's request gave the following instructions :

"If the plaintiff filed the dispatch on Sunday to be transmitted and delivered on that day, and represented to the agent of the telegraph company at the time that it was a work of necessity, when in fact it was not a work

of necessity, the plaintiff cannot recover the penalty, and the finding must be for the telegraph company.

"The addressor of a telegraphic dispatch is presumed to know whether it is lawful to send his dispatch on Sunday, but no such presumption exists on the part of the agent of the telegraph company, unless he receives such knowledge of the dispatch as will inform him of its contents.

"It is the duty of telegraph companies to keep reasonable office hours on Sunday for the purpose of sending such dispatches as are works of necessity and charity."

These instructions gave to the defendant the benefit of its evidence, and submitted to the trier of the facts the only question open to the defense. Finding for the plaintiff notwithstanding these instructions, the court necessarily found that the defendant was not led to receive the message because it was represented to it to be a work of necessity, but received it in the ordinary course of its business as any other message, and, hence, did *voluntarily* contract in so doing. By so finding, it necessarily supplied the imperfection in plaintiff's petition which is complained of.