PULITZER PUBLISHING COMPANY, Plaintiff, Appellant, v. HENRY J. McNICHOLS, Defendant, Appellant.

St. Louis Court of Appeals, February 4, 1913.

1. **CONTRACTS: Violative of Criminal Statutes: Validity.** An act or contract which is prohibited or declared unlawful by a criminal statute is void and will not give rise to a cause of action, even though the statute does not declare the act or contract void.

2. **SUNDAY: Contracts Executed or Performed on Sunday: Validity: Common Law Rule.** At common law, any act except judicial acts might be done as lawfully on Sunday as on any other day, and contracts made, as well as contracts to be performed, on Sunday were valid.

3. **STATUTES: Rules for Construction.** A cardinal canon in the construction of statutes is to ascertain and enforce the intendment of the lawmaker.

4. **SUNDAY: Contracts Executed or Performed on Sunday: Validity: "Damages" Defined.** The word "damages," as used in Sec. 4802, R. S. 1909, providing that section 4801, forbidding labor or work on Sunday, shall not be a defense to a suit for the recovery of damages from any person voluntarily contracting or engaging in business on Sunday, is a technical word, having a peculiar and appropriate meaning in law, and hence, under the express provision of section 8057, should be given such technical meaning.

5. ————: ————: **Statute Construed.** The provision of Sec. 4802, R. S. 1909, that section 4801, prohibiting labor or work on Sunday, shall not be a defense to a suit for the recovery of damages from any person voluntarily contracting or engaging in business on Sunday, is remedial in its nature and should be liberally construed.

6. ————: ————: **Validity: Statute Construed: "Damages" Defined.** An action by a newspaper publisher against an advertiser for the contract price of advertising and for an additional price for advertising already paid for under a provision of the contract increasing the price if the contract was abandoned, was an action for "damages" within Sec. 4802, R. S. 1909, providing that section 4801, prohibiting labor or work on Sunday, shall not be a defense in a suit for damages against a person voluntarily contracting or engaging in business on Sunday; the term "damages" not being confined to actions *ex delicto* but applying also to actions on contracts.

7. ————: ————: ————: **Sunday Advertising.** A merchant who advertises his goods in a Sunday paper "voluntarily engages in business on Sunday," within Sec. 4802, R. S. 1909, providing that the preceding section, which forbids work or labor on Sunday, shall not prevent a recovery of damages from a person who voluntarily engages in business on Sunday, and hence he is liable on a contract for advertising.

8. ————: ————: ————: **Statute Construed.** Sec. 4802, R. S. 1909, providing that the preceding section, which forbids work or labor on Sunday, shall not prevent a recovery of damages from a person who voluntarily engages in business on Sunday, applies to any one voluntarily engaging in business on Sunday, even though the latter requires no work or labor on his part.

9. **CONTRACTS: Rules for Construction.** In construing contracts the real intention of the parties must be sought.

10. ————: **Advertising Contracts: Construction.** A contract for advertising, providing that, if the contract should be canceled or made void, a higher rate would apply for the amount of space actually used, should not be construed as requiring a cancellation or annulment in the legal sense, making the contract nugatory so that no recovery could be had upon it, but should be regarded as covering an abandonment of the contract by the advertiser by failing to use the agreed amount of space.

11. **EVIDENCE: Explaining Ambiguous Contract: Parol Evidence.** A letter delivered to an advertiser when an advertising contract was signed, and treated as a part thereof, which stated that the publisher would conform to the advertiser's wishes in plac-

ing advertisements as near as possible, consistent with the publisher's rules, and that, if the advertisements were of a certain width and depth, they would be built to at least within 25 lines or less of the top, was ambiguous as to whether the promise to conform to the advertiser's wishes related only to the position of the advertisements on the page or to the pages on which they would be placed and hence justified the admission of parol evidence of a former dispute concerning the location of the advertisements on the page and that the letter was written to obviate that ground of dispute.

12. **CONTRACTS: Advertising Contracts: Construction.** A letter which was delivered to an advertiser when an advertising contract was signed, and treated as a part thereof, stated that the publisher would conform to the advertiser's wishes in placing advertisements as near as possible, consistent with the publisher's rules, and that, if the advertisements were of a certain width and depth, they would be built to at least within 25 lines or less of the top. Parol evidence was admitted of a former dispute concerning the location of the advertisements on the page and that the letter was written to obviate that ground of dispute. *Held*, that the contract, when read in connection with such parol evidence, did not entitle the advertiser to require that his advertisements should be published on the outside page of the paper, but gave the publisher a reasonable latitude in regard to the page upon which it might place them.

13. **EVIDENCE: Explaining Ambiguous Contract: Parol Evidence.** While parol contemporaneous evidence is inadmissible to contradict or vary the terms of a written instrument, the writing should be read in the light of surrounding circumstances in order to understand its intent and meaning, and such circumstances may be shown by parol evidence.

14. **CONTRACTS: Advertising Contracts: Performance.** Where an advertising contract did not entitle an advertiser to require that his advertisements should be placed on the outside page of a paper, the publisher did not breach the contract by publishing an advertisement on an inside page without first notifying the advertiser, notwithstanding a request by him that it be placed on an outside page, especially where he did not specifically state that it should be omitted if it could not be published on such page.

15. ————: ————: ————. Where an advertising contract does not provide in what part of the paper the advertisement shall be placed, the publisher has some latitude with respect to placing the advertisement, but he may not place it in a comic supplement or other supplementary sheet.

16. **APPELLATE PRACTICE: Conflicting Decisions: Disposition of Case.** Where the decision of one of the Courts of Appeals conflicts with a decision of one of the other Courts of Appeals, the cause will be certified to the Supreme Court for final determination.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

REVERSED AND REMANDED (*with directions*).

*Cause certified to Supreme Court.*

*Edward A. Feehan* for defendant, appellant.

(1) If the consideration of a contract, either in whole or in part, be illegal, this defeats the entire contract, and it is immaterial whether the contract itself discloses such illegality, or it be established by evidence *aliunde*. Downing v. Ringer, 7 Mo. 585; Sumner v. Summers, 54 Mo. 340; Sprague v. Rooney, 104 Mo. 349; Hagerty v. Ice Mfg. Co., 143 Mo. 238; Fair Ass'n v. Carmody, 151 Mo. 566; Bick v. Seal, 45 Mo. App. 475; Friend v. Porter, 50 Mo. App. 89; Malone v. Fidelity Co., 71 Mo. App. 1; Board of Trade v. Brady, 78 Mo. App. 585; Rice v. Bank, 98 Mo. App. 696; Sawyer v. Sanderson, 113 Mo. App. 233; Tandy v. Commission Co., 113 Mo. App. 409; Miller v. Ammon, 145 U. S. 421; Handy v. Publishing Co., 41 Minn. 188; Wilbur v. Stoepel, 82 Mich. 344; Covington v. Threadgill, 88 N. C. 186. (2) Where a publishing company contracts to publish a newspaper and to print advertisements therein, and the evidence shows that part of the labor incident to the printing and publication of such paper is regularly and in the ordinary course of the business of the company, done on Sunday, and that such Sunday work is actually done in performing the contract, no recovery can be had for services rendered by the publishing company under such contract. Knapp & Co. v. Culbertson, 152 Mo.

App. 147; Handy v. Publishing Co., 41 Minn. 188; Smith v. Wilcox, 24 N. Y. 353; Porter v. Paving Co., 214 Mo. 1. (3) An illegal contract will not support any cause of action, whether on the contract itself, or on *quantum meruit,* or one sounding in damages. Downing v. Ringer, 7 Mo. 585; Keating v. City, 84 Mo. 415; Stewart v. Thayer, 170 Mass. 560; Harris v. Roof, 10 Barb. 489; Bixley v. Moore, 51 N. H. 402; Sullivan v. Horgan, 17 R. I. 109; Brinkman v. Eisler, 16 N. Y. Supp. 154. (4) Where a party to a continuing contract refuses to go on with same according to its terms, or insists on carrying out the contract in a way which would render the performance of the residue a thing different in substance from what was contracted for, the other party need not perform further on his part. 9 Cyc. 649; Berthold v. Electric Co., 165 Mo. 280; Murphy v. City, 8 Mo. App. 483; Smith v. Keith, 36 Mo. App. 567; Cousins v. Hann, 100 Mo. App. 452; Claudius v. Amusement Co., 109 Mo. App. 346; Laswell v. Handle Co., 147 Mo. App. 497; Leopold v. Salkey, 89 Ill. 412; Railway Co. v. Richards, 152 Ill. 59; Ballance v. Vanuxem, 191 Ill. 319; Bell v. Hoffman, 92 N. C. 273; Godchaux v. Hyde, 52 So. (La.) 269; Gardner v. The Roycrofters, 118 N. Y. Supp. 703; Stephenson v. Cady, 117 Mass. 6; O'Neill v. Supreme Council, 70 N. J. Law 410; Anvil Co. v. Humble, 153 U. S. 540.

*Judson, Green & Henry* for plaintiff, appellant.

(1) The contract sued upon does not by its terms require that any portion of the specified advertising shall be placed in the Sunday paper, because the clause of the contract which originally required that at least one-fourh of all the advertising should be in the Sunday paper was admitted by defendant to have been stricken out before the contract was signed. (2) The item of $313.60, for the advertisement of May 10, 1908, is not illegal on account of its having been

inserted in one of plaintiff's Sunday papers. Sheffield v. Balmer, 52 Mo. 474; Basset v. Tel. Co., 48 Mo. App. 566; R. S. 1909, sec. 4802. (3) The public policy of this State respecting the right to recover for advertisements published in Sunday papers is not to be determined alone from section 4801, Revised Statutes 1909, which makes it a misdemeanor to perform work or labor on the Sabbath day; but that section is modified by and the public policy of the State respecting Sunday contracts is fully declared in section 4802, Rev. Stat. 1909, Secs. 4801 and 4802; Bassett v. Western Union Telegraph Co., 48 Mo. App. 566. (4) Irrespective of the above statute, the public policy of this State respecting the right to collect for advertising published in a Sunday paper has also been declared by the Supreme Court in the case of Sheffield v. Balmer, 52 Mo. 474, and the judges of that court all agreed that a newspaper could compel an advertiser to pay for such an advertisment. Sheffield v. Balmer, 52 Mo. 474; Association v. Delano, 108 Mo. 217; State v. Railroad, 143 S. W. 785. (5) Contracts for Sunday labor were valid and enforcible at common law. State v. Railroad, 143 S. W. 785; Ex parte Nut, 157 Mo. 527; Sheffield v. Balmer, 52 Mo. 474; Association v. Delano, 108 Mo. 217. (6). The contract sued upon did not give Mr. McNichols any right to insist that his advertisements should be placed on an "outside" page. The contract and letter of September 30, 1907, must be construed together in the light of the circumstances and relations between the parties which then existed.

ALLEN, J.—This action was begun before a justice of the peace, by plaintiff filing the following statement:

"Plaintiff says that defendant by the written contract of September 30, 1907, filed as a part hereof, agreed to advertise in plaintiff's paper and to pay

therefor at the rate of sixteen cents per line, if 25,000 lines were used in a period of one year from September 30, 1907, or at the regular card rates charged by plaintiff for advertising, if less-than 25,000 lines were used in said year. Plaintiff further says that defendant did thereafter use advertising space in plaintiff's paper to the amount of $416.46 and has refused to pay therefor. Wherefore, plaintiff prays for judgment against defendant for the sum of $416.46 together with interest thereon at six per cent from September 30, 1908. Itemized statement hereto attached."

With the above statement there was filed the contract therein referred to, in words and figures as follows:

"$4000 St. Louis, Sept.30, 1907.

"To the Pulitzer Publishing Co., Publishers St. Louis Post Dispatch.

"We hereby authorize you to insert our advertisements in the Daily or Sunday Post Dispatch to occupy the space of 25,000 lines of display to be used by us within a period of one year from date, for which we hereby promise and agree to pay the Pulitzer Publishing Company the sum of four thousand dollars. We reserve the privilege under this agreement of using additional lines of display in the Daily or Sunday within the time specified above at sixteen cents per line each insertion. We also reserve the privilege of inserting leaded locals at sixty cents per line each insertion Daily or Sunday.

"In consideration of the above rate we hereby agree to consume one-fourth or more of all the advertising ordered by us within the year named above in the Sunday issues of the Post-Dispatch.

"(Signed) Henry J. McNichols.

"Accepted subject to conditions on back by

"The Pulitzer Publishing Co.

"W. C. Steigers, Business Manager.

"Per. E. N. Giles."

The last paragraph of the contract appears stricken out by means of ink lines drawn through the same. On the back of the contract are set out the ordinary advertising rates of defendant for advertising in the columns of its paper, and certain other provisions entitled "Conditions." Of the latter we need only notice the following:

"3. If, for any reason, this contract is cancelled or made void, the advertiser hereby agrees to pay regular card rates in effect at the date of this contract for the amount of space that shall have been used."

With plaintiff's statement was filed an account which we need not set out in full. By it plaintiff showed two items as being due from defendant to plaintiff; one for $102.66, being one cent per line for all the advertising done by defendant under the contract (10,266 lines) and being the excess of the "card rate" over the contract price; the other for $313.60 for an advertisement published May 10, 1908, at the contract price, viz., sixteen cents per line. There appears a further item of twenty cents concerning which there was no testimony, and it need not be noticed.

Upon the trial in the justice court plaintiff recovered judgment for the sum of $466.42. Thereafter defendant duly perfected his appeal to the circuit court of the city of St. Louis, where the cause was tried before the court sitting as a jury, a jury having been waived. Plaintiff prayed the court to give the following declarations of law, which were refused by the court, viz:

"1. The court declares the law to be that plaintiff is entitled to recover against defendant in the sum of $416.46 with interest thereon from June 2, 1908, to this date at six per cent per annum, or for a total of $482.90."

"2. The court declares the law to be that under the contract offered in evidence the plaintiff had a

right to place the defendant's advertisement of May
10, 1908, on an inside page, and the fact that it was not
placed on an outside page is no defense in this case.''

"3. The court declares the law to be that if it be
lieves from the evidence that the section of plain-
tiff's paper in which the defendant's advertisement
of May 10, 1908, appeared was set up in print and
that part of the paper completely run through the
presses before midnight Saturday, then it is no de-
fense that the late news section of the city edition of
the paper may not have been run through the presses
until Sunday morning or that the entire paper when
completely printed was distributed to subscribers and
carriers and sold on the streets of St. Louis on Sun-
day morning.''

The circuit court found the issues for plaintiff on
the first item of its account, to-wit, $102.66, with in-
terest thereon, and found in favor of defendant on the
other item of plaintiff's account, and accordingly ren-
dered judgment in favor of plaintiff for the sum of
$106.50. From this judgment both plaintiff and de
fendant have appealed duly perfecting their appeals
by filing here a joint abstract of the record.

Plaintiff corporation is the publisher of the St.
Louis Post-Dispatch, a daily newspaper published in
the city of St. Louis; the defendant is a merchant,
conducting a furniture business in said city. The evi-
dence shows that for some time prior to September
30, 1907, plaintiff's solicitor had endeavored to ob-
tain an advertising contract from the defendant; that
the defendant had formerly been an advertiser in the
columns of plaintiff's newspaper, but that some trouble
had arisen between plaintiff and defendant, and the
latter had ceased to give plaintiff any advertising for
a considerable period of time. It appears that de-
fendant said to plaintiff's solicitor: "Bring a letter
from the head man that will show he is going to do the
right thing, and we will not have any trouble.'' On

September 30, and at the time of the signing of the contract in question by defendant, the following letter was delivered to defendant by Mr. Giles, plaintiff's solicitor:

"Sept. 30, 1907.

"Mr. Henry McNichol,

1020 Market St., City.

Dear Mr. McNichol:

Our Mr. Giles asks that we send you a line giving you an idea what we can do to please you in the handling of your business.

It will be a pleasure for us to conform as near to your wishes in the placing of your ads as is possible, consistent with the irrevocable rules governing the make-up of our paper.

But as we understand Mr. Giles, it is your intention to make all double-column ads 280 lines, or two full columns, in depth, and where your ads are three or four columns wide, if you will in all cases make them 200 lines or more in depth, it will give us pleasure to build these ads to at least within 25 lines or less of the top.

We will, of course, appreciate your order, Mr. McNichol, and will do all that we can to show it. You have been absent from our columns for a year and a half and I know we have both lost money. We will be pleased to renew the very pleasant relations which have existed for so many years with the pioneer installment house of St. Louis.

With every assurance of our highest esteem and best wishes, we are,

Very truly yours,

W. C. Steigers,

Business Manager."

Thereupon the contract here sued upon was executed, and under it defendant inserted advertising matter in the columns of plaintiff's newspaper during the months of October and November, 1907, and April and May, 1908, amounting in all to 10,266 lines of display advertising, the contract price for which was sixteen cents per line. There was evidence that the regular card rate mentioned in the condition on the back of the contract, set out above, in effect at the date of the contract, for this species of advertising, was seventeen cents per line, where the amount of the advertising was 10,000 lines or more.

About ten days or two weeks prior to May 10, 1908, defendant sent to plaintiff "copy" for an advertisement to be published in plaintiff's newspaper on Sunday, May 10, 1908. On this copy defendant made a memorandum in regard to the location of the advertisement in the paper. There is some conflict in the evidence as to just what this memorandum was. One witness for plaintiff testified that it was "outside page," another that it was "request outside page;" the defendant testified that it was "must be outside page." The evidence shows that the advertisement in question was published in the said Sunday edition of plaintiff's newspaper at the *top* of an *inside* page. There is no evidence that plaintiff attempted to communicate with defendant regarding the location of the advertisement in the paper, prior to its publication. Defendant left the city of St. Louis on Friday preceding the Sunday in question, and the first that he learned regarding the publication of the advertisement on the inside page was through seeing a copy of the paper the following Monday morning in the city of New York. This advertisement consisted of 1960 lines, which at the contract rate of sixteen cents per line amounted to $313.60. Defendant refused to pay therefor, and thereafter inserted no further advertising matter in plaintiff's paper during the period

covered by the contract; and plaintiff brings this action to recover: (1)   The item of $102.66, being one cent per line for the entire 10,266 lines, i. e., the difference between the card rate and the contract rate; and (2) the item of $313.60 for the advertisement of Sunday, May 10, 1908, at the contract rate.

Defendant contends that the contract is void for the reason that the parties contracted for the publishing of advertising matter on Sunday, a work not of necessity or charity, in controvention of section 4801, Revised Statutes 1909, and that this defeats any recovery whatsoever upon the contract; and, that even if this should not render the contract itself void, defendant insists that, under the evidence, it precludes a recovery for the publication on Sunday, May 10, 1908. As to the first item of $102.66, the further defense is made that there was no refusal on the part of defendant to comply with the contract, but that plaintiff is in default thereon in not observing defendant's direction as to the last advertisement published, and that no cancellation of the contract, or anything rendering it void, has been shown, whereby plaintiff would be entitled to be paid for the advertising at the "card rate" instead of the contract rate, under that one of the "conditions" on the back of the contract set out above. As to the second item of $333.-20, defendant also disclaims liability thereon because plaintiff disregarded the said directions of defendant, by giving the advertisement in question a location in the newspaper different from, and less desirable than, that requested and directed by defendant.

I.   Since the alleged violation of the statute above mentioned is interposed as a bar to any recovery upon the contract, upon the ground that the latter was illegal and void, as well as to a recovery for the specific item of advertising on Sunday, May 10, 1908, we shall pass at once to the consideration of this question.

We shall not stop to consider the contentions of coun-
sel *pro* and *con* as to whether the contract is indivisible
and the whole of it tainted with the so-called illegality,
or whether it is separable and valid as to that portion
of the advertising not actually done on Sunday.
Neither shall we concern ourselves at this time with
the proposition advanced by learned counsel for plain-
tiff to the effect that the contract itself could not be
construed as being illegal and void, because it did not
*require* that any advertising be published on Sunday,
and the entire contract might have been performed
according to its terms, without any Sunday publica
tion—though there is respectable authority in sup-
port of this contention. We shall first look to see
whether the alleged violation of this statute should
be permitted to be here interposed at all by the de-
fendant as a defense to plaintiff's cause of action; for,
if it should not, then we are in no wise concerned with
these questions just referred to.

The evidence showed that, on Sundays, plaintiff's
newspaper, the Sunday Post-Dispatch, is sent out
through the mails in several separate editions. The
first edition is sent out Thursday night to faraway
points; the second is sent out Saturday morning to
points in western Missouri; the third is fully printed
and sent out about 10:30 p. m. Saturday night to towns
near St. Louis. The fourth and last edition, called
the city edition, and circulating in the city of St. Louis,
is printed in three sections of about sixteen pages
each. The first two of these sections are fully printed
before 11:30 p. m. Saturday night. The third section
called the late news section, is not completed until af-
ter 3 a. m. Sunday morning. The defendant's ad-
vertisement appeared in the second section of this
last or city edition, as well as in the earlier editions
going out Saturday morning and Saturday night. It
was not in the third section of the last or city edition,

which section was the only part of that edition which was printed on Sunday. However, it appears that the newspaper was not complete without this third section; that the rest of the paper was held until this section could be folded in with it, and the completed paper then sent out for distribution. It therefore clearly appears that at least a portion of the work required in producing the completed city edition of plaintiff's Sunday paper, of which the section containing defendant's advertisement was a part, was actually performed within the twenty-four hours legally constituting Sunday. So that, while defendant's advertisement was not actually printed on Sunday, work was performed on that day necessary to be done in order to publish the same.

The general principle of law that one cannot recover for the doing of any act, or upon any contract made, in violation of a criminal statute, is well settled. The principle is, that where the act is prohibited or declared unlawful, it is not necessary for the law to declare the act or contract void, but that an unlawful act, or a contract to do an unlawful act, is necessarily void. [Downing v. Ringer, 7 Mo. 585; Tri-State Amusement Co. v. Highlands Co., 192 Mo. 404; 90 S. W. 1020; Rothwell v. Gibson, 121 Mo. App. 279, 98 S. W. 801.] Such has been the law in this State since the decision in Downing v. Ringer, *supra.*

At common law an act might be done as lawfully on Sunday as any other day, with the exception of judicial acts. [3 Blackstone Comm. 277; Bishop on Contracts, 536; Lawson on Contracts (2 Ed. 1905) p 290; Page on Contracts, sec. 455; City of Parsons v. Lindsay, 41 Kansas, 336, 13 Am. St. Rep. 290, 3 L. R. A. 658.] Contracts made on Sunday were therefore valid at common law (Robert's v. Barnes, 127 Mo. 405, 30 S. W. 113, 48 Am. St. Rep. 640; Kepner v. Keifer, 6 Watts (Pa.), 231, 31 Am. Dec. 460) as were likewise contracts to be performed on Sunday,

[Sheffield v. Balmer, 52 Mo. 474; St. Louis Agricul-
tural, etc. Association v. Delano, 108 Mo. 217, 18 S.
W. 1101; Ex parte Neet, 157 Mo. 527.; State v. Rail-
road, 143 S. W. 785; Ward v. Ward ,75 Minn. 269.]

As the common law made no distinction between
Sundays and week days in regard to the making and
the performance of contracts, if the contract in ques-
tion is itself illegal and void, or if no recovery can be
had for the rendering of those services under the con-
tract which were performed on Sunday, it is because
of the statute above mentioned, prohibiting work and
labor on Sunday, other than the household offices of
daily necessity, or other works of necessity.

Sections 4801 and 4802, Revised Statutes 1909 are
as follows:

"Sec. 4801. Sabbath breaking.—Every person
who shall either labor himself, or compel or permit
his apprentice or servant, or any other persons under
his charge or control, to labor or perform any work
other than household offices of daily necessity, or other
works of necessity or charity, or who shall be guilty
of hunting game or shooting on the first day of the
week, commonly called Sunday, shall be deemed guilty
of a misdemeanor, and fined not exceeding fifty dol-
lars."

"Sec. 4802. Last section construed.—The last
section shall not extend to any person who is a mem-
ber of a religious society by whom any other than the
first day of the week is observed as a Sabbath, so that
he observes such Sabbath, nor to prohibit any ferry-
man from crossing passengers on any day of the week;
*nor shall said last section be extended or construed
to be an excuse or defense in any suit for the recovery
of damages or penalties from any person, company or
corporation voluntarily contracting or engaging in
business on Sunday.*"

Acts similar to those above, with the exception of
the words above italicized, have been upon our statute

books since 1825. In the Revised Statutes of 1879 the same appeared in two sections, viz., sections 1578 and 1579 of that revision. Section 1578 of that revision was precisely the same as section 4801, Revised Statutes 1909, the same having remained unchanged. Section 1579, Revised Statutes 1879, was the same as section 4802, Revised Statutes 1909, above set out, with the exception of the words italicized.

In the latter part of the year 1888, the case of Thompson v. W. U. Telegraph Company, 32 Mo. App. 191, was decided by the Kansas City Court of Appeals. In that case it was held that the plaintiff could not recover damages for the failure of a telegraph company to transmit on Sunday a dispatch relating to ordinary business, on the ground that the defendant was prohibited from so doing by said section 1578 Revised Statutes 1879. At the next session of the Legislature, early in 1889, section 1579, Revised Statutes 1879, was amended by adding thereto the words italicized above.

It is not contended here that the publication of a newspaper on Sunday is a work of necessity within the meaning of the statute, and the contract here sued upon indicates that it is not one of charity. That it is not a work of necessity has been held in Sheffield v. Balmer, 52 Mo. 474; Knapp v. Culbertson, 152 Mo. App. 147, 133 S. W. 55; Smith v. Wilcox, 24 N. Y. 353; Handy v. St. Paul Globe Printing Co., 41 Minn. 188; and it has been so intimated in Porter v. Paving Company, 214 Mo. 1.

Under what is now section 4801, Revised Statutes 1909, it has been held that one cannot recover for services as foreman of a sawmill, rendered on Sunday. [Barney v. Spangler, 131 Mo. App. 58, 109 S. W. 855.] In this case a part of plaintiff's recovery below was for labor performed on Sundays, and this court compelled a remittitur to be entered therefor before affirming the judgment.

In Sheffield v. Balmer, 52 Mo. 474, the action was by the publishers of a newspaper to recover upon a contract for publishing in a Sunday edition of the paper. It did not appear from the evidence that the publication of the advertisements in question requir- ed the actual doing of any work on Sunday, and i⁺ was held that where a contract could be performed without any violation of law it would be presumed that it would be so performed, and the plaintiffs were per- mitted to recover.. This case is distinguishable from the one before us for the reason that the evidence here discloses that it was necessary that Sunday labor be performed in completing the city edition of the paper in question, in which appeared plaintiff's last advertisement.

The precise question here involved was passed upon in Publishers, Knapp & Co. v. Culbertson, 152 Mo. App. 147, 133 S. W. 55, in which the Kansas City Court of Appeals held that contracts for advertising in the Sunday edition of the St. Louis Republic, a newspaper printed and published in the city of St. Louis, were void, since the contracts called for work on Sunday in violation of the section of our statutes above mentioned, making such work a criminal of- fense. In that case it appeared that there were four editions of the paper issued every Sunday; that no Sunday labor was done on the first two of these edi- tions, but, as to the last two editions, press work, mail- ing and delivery were performed on Sunday.

The same conclusion has been reached by other courts, under statutes similar to the one above. [Smith v. Wilcox, 24 N. Y. 353; Handy v. St. Paul Globe Pub- lishing Co., 41 Minn. 188.]

Counsel for plaintiff here takes the position that section 4802, Revised Statutes 1909, as it now stands, precludes defendant from setting up the immediately preceding section (4801) as a defense to this action. In the opinion in Knapp, Publishers, etc. v. Culbert-

son, supra, this section was in no way referred to.
That this section was brought to the attention of that
court at the time, appears from the reference to the
same in the brief of counsel for respondents therein,
accompanying the reported opinion in the case. No
reference however is made thereto in the opinion, and
the court's decision is based upon the ground that the
plaintiff therein could not recover upon a contract in
violation of section 4801, altogether ignoring the suc-
ceeding section (4802).

In regard to the effect to be given to section 4802,
it may be well at the outset to refer to what was said
by this court in Bassett v. Telegraph Company, 48
Mo. App. 566, in regard to the reasons for the above
mentioned amendment thereto:

"There can be no doubt as to the reasons for this
amendment, or the existing evils which the Legislature
sought to remove or remedy by the amendment. It is
a notorious fact that the common carriers of the State
are and have been in the habit of contracting for the
carriage of freight or the transportation of passen-
gers on the Sabbath, as if it were a secular day. In
actions arising out of such illegal contracts the courts
of the State have experienced some difficulty in com-
pelling the carrier to respond in damages for neglect
of duty. [Guinn v. Railroad, 20 Mo. App. 453.] In
1888 the Kansas City Court of Appeals, in an action
against this defendant to recover the statutory pen-
alty for failure to transmit a message delivered on
Sunday (Thompson v. Tel. Co., 32 Mo. App. 191), de-
cided that defendant was not liable for a violation of
the statute, when it appeared that the message con-
cerned an ordinary business transaction. These ad-
judications evidently brought about the amendment
and its proper application to such case will undoubt-
edly meet the ends of justice. Where common car-
riers and telegraph companies engage in a general
business on the Sabbath, regardless of the fact whether

the business done was permitted or prohibited by law it was the evident intention of the Legislature to eliminate from actions growing out of such contracts all defenses resting on the illegality of the transaction; that is, in telegraph cases, all questions concerning the character of messages sent. In other words, if railroad and telegraph companies pay no attention to the Sunday law, but proceed with their business on the Sabbath as if it were an ordinary business day, they ought not to be allowed to take the profits, and then compel their patrons to show that their contracts were not avoided by the Sunday law, in order to hold them for a violation of their statutory duty. This is the plain reading of the amendment; therefore, such a defense, in cases like we have here, is prima facie unavailable, and can only be made available under the necessary averments and proof by the defendant that its offices were opened on the Sabbath for the purpose of transmitting messages of necessity *only*, and that it was induced to send the dispatch in question through the false misrepresentations of the sender that it was one of necessity, whereas it concerned ordinary business. Under such circumstances only can it be said that the defendant *did not voluntarily engage in the business* within the meaning of the statute.''

The action was one against a telegraph company, and the portion of the opinion above quoted deals with this amendment in its application to common carriers and telegraph companies engaging in business on the Sabbath, regardless of whether the same was permitted or prohibited by law. There is nothing however in the amendment itself to restrict its application to common carriers and telegraph companies, but on the contrary the language thereof is such as to make it applicable to all classes of persons and corporations "voluntarily contracting or engaging in business on Sunday." By the language of this amendment,

now a part of section 4802, Revised Statutes 1909, defendant cannot avail himself of the preceding section (4801) as a defense to this action provided that thi*s* is a "suit for the recovery of *damages or penalties* from any person, company or corporation *voluntarily contracting or engaging in business on Sunday.*"

· In respect to any statute, a cardinal canon of constructing is "to get at the intendment of the lawmaker and enforce that intendment." [Grimes v. Reynolds, 184 Mo. l. c. 688, 83 S. W. 1132; Keeney v. McVoy, 206 Mo. l. c. 65, 103 S. W. 946; State v. Trustees, 234 Mo. 299, 136 S. W. 397; Decker v. Diemer, 229 Mo. l. c. 324, 129 S. W. 936.] Concerning the construction of statutes of this State, section 8057, Revised Statutes 1909, provides that "words and phrases shall be taken in their plain or ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import." The word "damages" must be regarded as a technical word having a "peculiar and appropriate meaning in law." [Nicholas v. Kelley, 159 Mo. App. l. c. 29, 139 S. W. 248.]

The amendment in question is remedial in its nature. [Heman v. McNamara, 77 Mo. App. 1.] It was enacted to relieve against the hardship of a defense based upon the preceding section by one who had voluntarily contracted or engaged in business on Sunday. Being remedial it must receive a liberal rather than a strict construction. [Heman v. McNamara, supra; Dugan v. Gray, 114 Mo. 497, 21 S. W. 854; State v. Swanger, 212 Mo. l. c. 477, 111 S. W. 7.]

Learned counsel for the defendant earnestly insists, however, that this is not an action either for *damages* or *penalties* within the meaning of the statute, and that the defendant in this case neither *contracted* on Sunday nor was he *voluntarily engaging in business* on Sunday. It is clear that the suit is not one for "penalties." It is insisted by counsel that, on the

other hand it is not a suit for "damages" but "a suit on the contract." Concerning this question we must look to the contract, and consider the nature of the action which plaintiff has brought here for the redress to which plaintiff claims it is entitled. The suit was begun in the justice court, where there are, properly speaking, no pleadings; but the statement, and the contract and account filed therewith, we think, in the light of the facts before us, clearly indicate that the action is one for breach of contract. It seems that, when defendant refused to pay for the advertisement of May 10, 1908, and failed or refused to furnish plaintiff with any further advertising matter during the period covered by the contract, plaintiff considered that defendant had breached the contract, and that this suit is bottomed upon such breach. It is clearly a suit on the contract; not however for specific performance thereof but for a money recovery, evidently as for a breach of the contract. The question is whether it may be said to be a suit for "damages" within the meaning of the statute (sec. 4802).

The term "damages," as expressing the amount which a party is entitled to recover, is of course applicable to actions *ex contractu* equally as well as to actions *ex delicto.* Bouvier defines the word "damages" to be: "The indemnity recoverable by a person who has sustained injury, either in his person, or relative rights, through the act or default of another. The sum claimed as such indemnity by plaintiff in his declaration. The injury or loss for which compensation is sought . . . " In Sedgwick on Damages (9 Ed), sec. 2, it is said: "The common law . . . is generally remedial in character, and its remedies are of a pecuniary description. It has few preventive powers; it can rarely compel the performance of con tracts specifically; its relief, for the most part, consists in the awarding of pecuniary damages. Whether it punishes wrongs, or remunerates for breach of con

tract, in either case its judgment simply makes com
pensation, by awarding a certain amount of money
by way of damages to the sufferer.'' It has been said
that the word ''damages'' means: ''A compensation,
recompense or satisfaction in money; that the word
''wrong'' means any deprivation of right, breach of
contract or injury done by one person to another; and
that therefore the expression ''damages for a wrong''
includes ''money due on contract.'' [O'Connor v. Dils,
43 W. Va. 54.]

In an early case it was said by Lord MANSFIELD
that in an action brought for the breach of a contract
for the payment of money only, although it ''be *nom-
inally* an action for *damages,* and *damages* be *nomin-
ally* recovered in it, yet it is really and effectually
brought for a *specific performance of the contract.*''
[Robinson v. Bland, 2 Burr. 1077, 1086.] And, again
Lord LOUGHBOROUGH says of such an action, that
''where the demand is for the payment of a sum of
money, it is a technical fiction to call the sum recovered
*damages;* it is the specific debt, and the jury give the
specific thing demanded.'' [Rutter v. Price, 1 H. Bl.
547, 554.] But, as was pointed out in an early Cali-
fornia case, the true theory of the recovery even on a
money demand ''is not that the party recovers the
particular note or chose in action, as is commonly
imagined, but that he recovers damages for the non-
performance of the contract, and in case of failure to
pay money due it has always been held that the true
measure of damages was the amount of money owing
and the interest which was agreed upon.'' [Guy v.
Franklin, 5 Cal. 416.]

However, the instrument in question here is not
a mere evidence of debt, but a contract whereby the
defendant agreed to furnish a certain amount of ad-
vertising, agreeing to pay for his advertising at one
rate if he furnished the stipulated amount and at a
higher rate if he defaulted as to the amount to be

furnished. Plaintiff says that defendant is in default on the contract and brings its suit to recover thereon. Hence we think that plaintiff's action may properly be regarded as one for *damages* for breach of contract, and we see no good reason why it should not be considered as comprehended within the language and meaning of section 4802, above mentioned. The statute itself refers to "contracting," so that, for one purpose at least, the word "damages" in the statute must mean damages for breach of contract. That is to say, the section provides that the preceding section shall not be a defense in any suit for the recovery of *damages* from any person or corporation voluntarily *contracting* on Sunday; so that it appears that, where the contract is voluntarily entered into on Sunday, the word "damages" is used with reference to a recovery for the breach thereof. It plainly appears from this that the term, as used in the statute, was not intended to be confined to actions *ex delicto,* but applies as well to actions arising upon contracts. We are, therefore, of the opinion that the action here is one comprehended within the terms of that section, and that the defendant cannot take refuge behind the preceding section (4801), provided defendant can be said to have been voluntarily "engaging in business" on Sunday, within the meaning of the act.

It is earnestly insisted, however, by learned counsel for the defendant, that defendant cannot be said to have been engaging in business, within the meaning of the statute, by inserting an advertisement in the Sunday edition of plaintiff's newspaper, and that only the plaintiff can here be said to have voluntarily engaged in business on Sunday. On this question we will say that the record discloses that defendant was at the time in question a merchant doing business in the city of St. Louis under the name of McNichols Furniture Company. Just what the advertisements were does not appear, but it is clear that defendant was doing

the advertising as a matter of business—in other words, that he was conducting this portion of his business, i. e. advertising his goods, on Sunday, through the medium of plaintiff's paper. We think that it would be idle to say that the plaintiff here alone was voluntarily engaging in business on Sunday. What was done by the plaintiff in this regard was done for and on behalf of defendant and under contract with him. The advertising was defendant's advertising, of course, and not the plaintiff's. And, in advertising his business on Sunday, we do not hesitate to say that the defendant must be held to have voluntarily engaged in business on Sunday, within the meaning and intend· ment of the act. The section in question applies to any one voluntarily *engaging in business* on Sunday, even though the latter required no *work* or *labor* on his part.

The action therefore being one, in our opinion, comprehended within the terms of section 4802, Revised Statutes 1909, and the defendant, as we hold, having voluntarily engaged in business on Sunday, he is, by the terms of that section, precluded from interposing the violation of the immediately preceding section as a defense to plaintiff's action.

II. As to the item of $102.66, the excess of the card rate over the contract rate, defendant further disclaims liability thereon because, as he says, the contract was in no way "cancelled" or "made void," and hence plaintiff did not become entitled to hold defendant for this excess.

While, strictly speaking, the contract had not been cancelled or made void, this provision of the contract should evidently be construed in the manner indicated by what we have said above. It is always the real intention of the parties that must be sought, and we think that here the intention may be gathered from the instrument itself, in spite of the rather inappropriate

use of certain terms there employed. It would be unreasonable to suppose that this provision was inserted in contemplation of anything that would altogether annul the contract, rendering it actually void. The provision was one of several printed "conditions" on the back of the instrument in question and subject to which plaintiff signed the contract. By its terms the advertiser was to be penalized, as it were, if the contract were "cancelled" or "made void;" indicating that it was intended for the purpose of holding the advertiser to his agreement to furnish the amount of advertising called for by the contract. And we do not think that the words "cancelled" and "made void," inappropriately used, as they evidently were, were intended to mean a cancellation of the contract in the legal sense of that term, or an actual annulment thereof, wherein it should become nugatory altogether, so that no recovery could be had upon it. The context does not bear out such a construction; for why provide for anything concerning the card rate, if such higher rate is to become payable only after the contract has become nugatory and will support no action?

From the provision in question as a whole, it would seem that the purpose was chiefly to provide against the failure of defendant to continue under the contract, and that the expression "if for any reason this contract is cancelled or made void" was intended to cover an abandonment of the contract by defendant before the completion thereof, whatever other purpose it may have had.

III.  Lastly, defendant asserts that he did not abandon the contract or commit a breach thereof, but that plaintiff breached the same by arbitrarily ignoring his direction to place the advertisement of May 10, 1908 on an outside page, without notice to him, and that defendant had the right to refuse to pay therefor, and to decline to go on further under the con-

tract because of plaintiff's said prior breach thereof, and that, therefore, he is not liable for either of the items in question.

The learned circuit judge who tried the case below held, in a memorandum of finding filed in the cause, that defendant was liable for the first item of $102.66, regardless of plaintiff's action in ignoring defendant's request or direction concerning the last advertisement, but that, as to the last advertisement itself, plaintiff could not recover (1) because of the violation of the statute (4801), and (2) because of plaintiff's failure to observe defendant's said request or direction without notice to him. The court felt bound by the decision in Knapp v. Culbertson, supra, though apparently reluctant to follow it, and, as stated in the memorandum, was better satisfied to place its decision upon the second ground above mentioned.

The question here involved is whether defendant had the legal right to demand that an advertisement furnished under the contract be placed on an outside page of plaintiff's newspaper; or, in other words, whether plaintiff was obligated by the contract to obey defendant's direction in this regard. To determine this question we must endeavor to ascertain the intention of the parties, gathered from the contract as a whole respecting the said right asserted by defendant.

The signed instrument itself is set out in full above, as is likewise the letter of plaintiff's business manager of the same date, which was handed to defendant at the time of signing the contract and which the lower court quite properly admitted in evidence as constituting a part of the contract between the parties. It will be observed that the contract alone, without considering the letter as a part of it, was silent as to where advertisements should be placed, and cannot be considered as giving defendant the right to require or demand that plaintiff publish his advertising matter on any particular page of plaintiff's newspaper.

The letter of the same date contained the assurance to defendant that the plaintiff would conform as nearly to defendant's wishes in the "placing" of his "ads," as was possible, "consistent with the irrevocable rules governing the make-up" of plaintiff's paper. Further on in the letter, defendant was told that, where the "ads" were of certain width and depth, plaintiff would "build these ads to at least within twenty-five lines or less of the top." It is not altogether clear whether the earlier portion of the letter, in regard to "placing" defendant's advertisements, had reference to placing them on particular pages, as well as to their location on the page itself, or whether it was meant to apply exclusively to the latter. The latter portion of the letter above referred to deals only with the question of their location with reference to the top of the page upon which they might appear. Certain parol testimony was admitted, and properly we think, indicating how this letter happened to be written and given to defendant at that time, which throws some light on the question of the interpretation to be given to the contract regarding what was meant by "placing" the advertisement—a matter which cannot be said to be entirely clear in the writing itself.

While parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument, the writing "should be read in the light of surrounding circumstances in order the more perfectly to understand and explain the intent and meaning of the parties." [Williams v. Railroad, 153 Mo. l. c. 534, 54 S. W. 689.] "The object of interpretation always is, or should be, to reach the actual intention of the parties. We mean, of course, that intention as expressed in the writing they employ to portray it, and consistent with the latter. When the subject-matter to which such a writing refers is not *entirely definite* and clear, it is permissible, and obviously just, to receive in evidence a description of

the circumstances of its execution that the court may be placed, as near as may be, in the situation of the contracting parties with a view the better to adjudge in what sense the language used was probably intended by them. [Swett v. Shumway, 102 Mass. 365; Keller v. Webb, 125 Mass. 88.] Putting a construction upon a document means ascertaining the meaning of the signs or words made upon it, and their relation to facts. . . . In order to ascertain the relation of the words of a document to facts, every fact may be proved to which it refers, or may have been intended to refer, or which identifies any person or thing mentioned in it. Stephen's Dig. Law of Evidence, art. 91, p. 108; Carter v. Foster, 145 Mo. 392.'' [Laclede Const. Co. v. Tie Co., 185 Mo. l. c. 62, 84 S. W. 76; Ellis v. Harrison, 104 Mo. l. c. 279, 16 S. W. 198.]

It appears that defendant had formerly been an advertiser in the columns of plaintiff's newspaper, but that a dispute had arisen between the parties and that defendant had not advertised in plaintiff's paper for about eighteen months. This former dispute, according to defendant's own testimony, as well as that of plaintiff's solicitor, was solely in regard to the location of defendant's advertisements on the pages upon which they appeared, defendant claiming that plaintiff was not placing his advertising matter at or near enough to the top of the page. Plaintiff's solicitor had been endeavoring to obtain a contract from the defendant for a long time, and finally defendant said to him: ''Bring a letter from the head man that will show he is going to do the right thing and we will not have any trouble.'' As a result of this, the letter above set out was written and brought to defendant by plaintiff's solicitor, and thereupon defendant signed the contract. From this we think it appears that this letter, construed in the light of the surrounding circumstances which caused it to be written, did not have reference to the placing of defendant's advertisements

on particular pages of plaintiff's newspaper. It seems that defendant had not theretofore insisted that his advertisements appear upon *outside* pages but that on the contrary, so far as the record discloses, they had been printed on inside pages, and that defendant had objected because they were not placed at or sufficiently near the top of the inside pages upon which they appeared. In view of the fact that the signed contract is silent as to this question, and construing this letter in the light of the circumstances which called it forth, we feel that we must hold that the contract of the parties was not that plaintiff was to be required to place defendant's advertisements on any particular page which defendant might direct. If, therefore, defendant did not have the legal right to demand that his advertisement be placed upon an outside page of the newspaper in question, it necessarily follows that the plaintiff was guilty of no breach of contract in disregarding his demand or direction to so place it.

Counsel for defendant says, *arguendo*, that it would be unreasonable to suppose that defendant had no right to give directions as to the page upon which his advertisements should be placed, for otherwise plaintiff, in arbitrarily placing them, might have chosen to publish them in the "comic supplement" of its paper, where they might not have been seen, or, if observed, not taken seriously. As to this, it may not be inappropriate to say that the latitude retained by plaintiff in this regard could not well be construed to permit it to publish defendant's advertisements in such a supplementary sheet, if it had one, as this would doubtless not be substantial performance on its part. We might perhaps with equal propriety suggest that if, on the other hand, defendant had, by the contract, the absolute and unqualified right to require plaintiff to publish an advertisement for him on any page which he demanded, then he might have arbitrar-

ily chosen to have his advertising matter displayed on the editorial page of plaintiff's paper, and plaintiff would have been bound to observe his direction or respond in damages.

It may be said, in view of the direction given by defendant, that the plaintiff should have notified him before printing the advertisement on an inside page, in order that the defendant might, if he saw fit, omit it altogether; and such was the holding of the lower court. In this connection it may be worthy of note that the defendant's direction in regard to this matter was not sufficiently full and specific to advise plaintiff that he would wish to have this advertisement omitted, if it could not be published on an outside page—a contingency, we think, that defendant might have been expected to take into consideration, inasmuch as neither the contract itself nor the letter unequivocally gave the defendant the right to select any particular page. Plaintiff does not rely upon the "irrevocable rules governing the made-up" of its paper, as an excuse for not observing defendant's said direction, and it was not shown what these rules were. Plaintiff's position is, that what appears in the letter concerning these so-called rules was not intended to give defendant the right to select particular pages, and in fact had no reference to this question, but that the plaintiff retained at least reasonable latitude in regard to the page upon which it might place any advertisement for defendant. This would seem to be the reasonable construction to be placed upon the contract between the parties, and hence it cannot necessarily be said that it was incumbent upon plaintiff to notify defendant that his request or direction could not be observed. The plaintiff may have been, and doubtless was, guilty of a breach of courtesy or propriety in not so notifying defendant before publishing this advertisement on an inside page. However this may be, our conclusion is, that plaintiff was not guilty of a

*breach of contract* in disregarding defendant's direction without notice to him, and that therefore defendant had no defense to this action upon that ground.

It follows that the second declaration of law requested by plaintiff should have been given; and furthermore since under the evidence, as we view it, defendant had no defense to either of the two items of plaintiff's account above referred to, the trial court should have found the issues in favor of plaintiff as to both items thereof.

For the reasons given above, the judgment of the circuit court should be reversed and the cause remanded, with directions to the circuit court to enter judgment for plaintiff for the amount of the two items of its account in question, with interest thereon. However, since the decision we have reached herein is in conflict with the decision of the Kansas City Court of Appeals in the case of Knapp & Co. v. Culbertson, 152 Mo. App. 147, the cause should be certified to the Supreme Court for final determination. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.