## MARGARET A. MOREY, Appellant, v. GROVER C. FELTZ, Respondent.

**St. Louis Court of Appeals, February 2, 1915.**

1. **COSTS: Assessment: Verdicts.** A jury has no right to assess the costs against the prevailing party.

2. **VERDICTS: Assessment of Costs by Jury: Disregard of Instructions.** Where the jury returned a verdict for plaintiff for $398, but assessed the costs against her, and upon being instructed by the court that they had no right to assess the costs, brought in another verdict for plaintiff for $246, *held* that the latter verdict cannot stand, since it is evident that the jury attempted to indirectly assess the costs against plaintiff, by deducting $152 from the amount they had previously found to be due her.

3. ————: **Responsiveness to Issues: Amount of Recovery.** In ·an action for rent, where, if the defense that plaintiff was exempted from payment by reason of the condition of the land was untenable, defendant was liable for more than $246, while, if that defense was tenable, he was liable for less, a verdict for that amount was unresponsive to the issues and unwarranted under any theory of the case, and hence plaintiff was entitled to have it set aside.

4. **LANDLORD AND TENANT: Construction of Lease: "Overflow" of Land.** A provision in a lease of farm land, which was in a river bottom and subject to overflow from the river, exempting the lessee from the payment of money rent "in case of overflow . . . by water," had reference to a rising of the waters of the river or the connecting bayous and sloughs and a flowing or spreading thereof over the land, and not to a flooding of the land by a heavy rainfall.

5. ————: ————: **"Destruction by Water."** A provision in a lease of farm land, exempting the lessee from the payment of money rent "in case of overflow *or* destruction by water," had reference to a destruction of the crops by ·water, whether such water came from an overflow of the river or from rainfall.

6. **CONTRACTS: Construction.** A contract should, if possible, be construed so as to give effect to all the words employed in it.

7. **LANDLORD AND TENANT: Construction of Lease: "Destruction by Water."** Where a lease of farm land exempted

the lessee from the payment of money rent "in case of over-flow or destruction by water," damage to the crops, caused by wet soil from heavy rains, which resulted in producing worms that subsequently injured the crop, and also delayed the sowing, resulting in the crop maturing late, so that it was injured by frost, did not fall within the term "destruction by water," since only destruction that was directly caused by water was contemplated, and these injuries were indirect and remote.

8. ————: ————: **Evidence: Contemporaneous Declarations.** In an action for rent of farm land, parol evidence as to the declarations of the parties at the time of the execution of the lease is admissible to explain what is included within the term "pasture land," where it is impossible to tell from the lease alone what was intended to be included within that term.

9. **CONTRACTS: Construction: Parol Evidence: Contemporaneous Declarations and Facts.** While parol evidence is not admissible to vary or contradict the terms of a written instrument, and while the parties may not testify as to what was intended nor state their conclusions, yet where there is an ambiguity in the instrument, the intention of the parties may be found by proof of the surrounding facts and circumstances and of their own contemporaneous declarations.

Appeal from Perry Circuit Court.—*Hon. Peter H. Huck*, Judge.

REVERSED AND REMANDED.

*Edward Robb* for appellant.

(1) The court erred in refusing instruction number 6 asked by appellant. Under the written contract and lease the only condition or provision in the lease under which respondent was authorized to pay the rent otherwise than in money (except the rent for the wheat crop) was "in case of overflow or destruction of the crops by water." As there was no testimony that any portion of the corn crop was overflowed or destroyed by water, appellant was entitled to a peremptory instruction as to all the corn land, amounting to seventy-eight and nine-tenths acres—seventy of

which was planted in corn, and eight of which was left vacant and uncultivated. Howard v. Hurst, 156 Mo. App. 205; Hoster v. Lange, 80 Mo. App. 234; Coleman v. Reynolds, 207 Mo. 463. (2) The court erred in refusing instruction number 7 asked by appellant. It was the duty of the court to construe the contract; and it was authorized to consider in connection with it the condition and surroundings of the parties and the objects they had in view. The terms "overflow or destruction of the crops by water" as intended by the parties at the time the lease was written unquestionably had reference to the overflowing by the Mississippi river as it had been subject to overflows from such river. This is the usual and ordinary meaning of those terms. Lumber Co. v. Dent, 151 Mo. App. 618; Kessler v. Clayes, 147 Mo. App. 93. (3) The verdict is contrary to the issues, evidence and instructions in this case. Under the lease, respondent was required to pay all the rent for corn land in money. As respondent admitted that there were seventy acres planted in corn, and something over eight acres of corn land left vacant, if appellant was entitled to anything for the corn land, in money rent, the amount would equal or exceed $350 for the corn land, in addition to the rent for the other land (excepting the oats and pasture land) about which there is no question. If appellant was not entitled to be paid in money for the corn land, then the amount of damages returned in the verdict ($246) is in excess of the amount claimed or shown for the balance of the land. Witty v. Saling, 171 Mo. App. 574; Wehringer v. Ahlemeyer, 23 Mo. App. 281; Watson v. Harmon, 85 Mo. 443; Huff v. Thurman, 78 Mo. App. 635; Cole v. Armour, 154 Mo. 353. (4) The court erred in permitting Reese Morey to testify as to a conversation between appellant and respondent before and at the time the lease was drawn up, and as to what he knew was meant by pasture land from that conversation, and that they agreed, before the lease

was drawn up, that there was to be no charge for the nine and three-fourths acres, for which rent for pasture land is claimed. Davis v. Scovern, 130 Mo. 303; Ringer v. Holtzclaw, 112 Mo. 519; Moore et al. v. Guardian Trust Co., 173 Mo. 218; Lumber Co. v. Dent, 151 Mo. App. 618; Kessler v. Clayes, 147 Mo. App. 93. (5) The court erred in permitting John Cissell, John Dippold, Grover C. Feltz (the respondent), Robert Hagan, Sattarenius Hagan and Richard Vessells to testify, over the objection of appellant, as to a heavy rainfall on the 30th of April, 1911, before any corn was planted, causing the water to stand in the sloughs and bayous and on the lower land for a week or ten days, and that this delayed the planting of the corn crop, and on that account the corn was late in maturing and was damaged by worms and frost. This was an attempt to change the contract and impose a different condition. Courts cannot change the contract or the issues as made by the pleadings by the admission of immaterial evidence. Sinnamon v. Moore, 161 Mo. App. 168. (6) The eighth instruction given on behalf of respondent is in conflict and inconsistent with appellant's fifth instruction—in that it says if the crops were overflowed or destroyed at any time in the year 1911, whereas the fifth instruction for appellants limits the time to a period prior to August 1, 1911. Separate and independent declarations of law inconsistent with each other are erroneous. Sheppard v. St. Louis Transit Co., 189 Mo. 362. (7) The tenth instruction given on behalf of respondent is erroneous and prejudicial in that it left to the jury the interpretation of the written lease. The construction of a written instrument, which is the basis of the action, is for the court and not the jury. Liggett v. Levy, 233 Mo. 590; Loesch v. Union Cas. & Surety Co., 176 Mo. 654. (8) The court should have sustained appellant's motion for a new trial on account of the misconduct of the jury in returning the verdict in this case. The misconduct is

shown conclusively and not denied by the opposite side which resulted in the jury deducting from the amount, which they had previously found for appellant, an amount which they estimated would cover the costs in the case. (9) The verdict was not responsive to the issues or evidence in the case, and appellant's motion for new trial should have been sustained. Mills v. Thompson, 61 Mo. 417; Huff v. Thurman, 78 Mo. App. 635; Cole v. Armour, 154 Mo. 333, 353; Wehringer v. Ahlemeyer, 23 Mo. App. 281; Thrasher Co. v. Speak, 167 Mo. App. 470; Hughey v. Eyssell, 167 Mo. App. 563; Watson v. Harmon, 85 Mo. 453; Witty v. Saling, supra; Kenny v. Kansas City P. & G. R. Co., 79 Mo. App. 204; Dailey v. City of Columbia, 122 Mo. App. 21. And the verdict must be responsive to all of the issues in the case, and where there is a counterclaim there must be a finding on the issues arising thereon. There was no finding on the counterclaim in this case, and the court committed reversible error in not setting aside the verdict. Winkelman v. Maddox et al., 119 Mo. App. 658; Marshal v. Armstrong, 105 Mo. App. 234.

*John V. Noell* and *Charles P. Noell* for respondent.

(1) Where there is no ambiguity in a written contract it is the province of the court and not of the jury to construe it. State to use v. Donnely, 9 Mo. App. 520; Black River Lumber Co. v. Warner, 93 Mo. 374; Chapman v. Railroad Co., 114 Mo. 542. But where the contract is ambiguous and the ambiguity must be solved by extrinsic unconceded facts, it is for the jury and not the court to draw inferences from such facts. Matthews v. Danaby, 26 Mo. App. 660; Enterprise Soap Works v. Sayers, 55 Mo. App. 16. (2) Where the verdict of a jury finds on the issues and superadds something not submitted to them, as a finding in rela-

tion to the costs in the first verdict returned in this case, or the finding in relation to one-third of the oats in the second verdict returned, the verdict is good, notwithstanding the addition of matters not in issue, which last is merely void, and should be disregarded as surplusage. Hence, the court should have received the first verdict returned and disregarded the finding as to costs, as it very properly received the second verdict after the jury at the request of plaintiff's counsel had been sent back to their room to correct their verdict. Hancock v. Buckley, 18 Mo. App. 459; Ranney v. Bader, 48 Mo. 539; State v. Knight, 46 Mo. 83. But the the court having refused to accept the first verdict returned, such verdict never had any force or effect in law; for a verdict is not perfect until it is delivered to and received by the court; and the verdict is not final unless the jury are discharged, until it is announced and recorded. Harry v. Speer, 120 Mo. App. 556; Norvell v. Deval, 50 Mo. 272. Until the rendition and record of the verdict, the jury remain in control of it with power to alter or withdraw it. The power has long been exercised to correct obvious errors in substance as well as in form. The rule has been amplified to the extent of authorizing the court, before the recording of the verdict and before the discharge of the jury, and while their relation to the case as jurors continues, to require a reconsideration of the verdict, not merely to correct error or remove obscurity in the verdict, but to alter it substantially if the jury so agree. Champ Spring Co. v. Roth Tool Co., 103 Mo. App. 103, 109; Proffatt, Jury Trial, secs. 456 and 457; 2 Thompson on Trials, sec. 2642; Abbott's Trial Brief, p. 536; Cattell v. Dispatch Pub. Co., 88 Mo. 356; Kreibohm v. Yancey, 154 Mo. 67. (3) Persons are presumed to employ words in their usual sense and not otherwise, unless there is something indicating a contrary intention; hence the words of a contract will usually be interpreted according to their popular mean-

ing.   Goode v. St. Louis, 113 Mo. 257; Lovelace v.
Travelers' Protective Assn., 126 Mo. 104; Sachleben v.
Wolfe, 61 Mo. App. 28; Fruin v. Crystal R. Co., 89
Mo. 397; Rubey v. Forcht, 21 Mo. App. 159; Weil v.
Schwartz, 21 Mo. App. 372; Richardson v. R. Co., 62
Mo. App. 1; Webb v. Mo. State Life Ins. Co., 134 Mo.
App. 576, 580; Rogers v. Modern Brotherhood of
America, 131 Mo. App. 353. If ambiguous expressions
appear in a contract the effect to be ascribed to them
must, if possible, be reasonable.   Hanna v. South St.
Joseph Land Co., 126 Mo. 1.   Courts cannot in con-
struing a written contract make a contract for the
parties by adding words thereto which are not con-
tained in the contract.  Rayburn v. Deaver, 8 Mo. 104;
Wood Mach. Co. v. Bobbst, 56 Mo. App. 427; Thornton
v. Royce, 56 Mo. App. 179; Beatie v. Rocky Branch
Coal Co., 56 Mo. App. 221; Eaton v. Wear Coal Co.,
125 Mo. App. 194.   Where there is room for construc-
tion, a contract should not be so interpreted as to give
an unfair advantage to one of the parties to it over
the other.   McManus v. Fair Shoe & Clothing Co., 60
Mo. App. 216.   The construction placed upon the lease
in the present case by appellant's counsel would work
a monstrous injustice and wrong against respondent
in favor of appellant.   The intention of both parties
regarding the purpose of a lease must wield potent in-
fluence in interpreting any clause of it; for the duty of
the court is to give effect to each clause which will
promote the general purpose, if it is possible, in view
of the language, to do this.   Conservative Realty Co.
v. Brewing Assn., 133 Mo. App. 261, 267.   (4)   The
testimony of Reese Morey that he was present at the
drawing up of the lease between his mother, the ap-
pellant, and Grover C. Feltz, the respondent, and heard
the talk and negotiations between them at that time,
and that he knew from that talk that the nine and
three-fourths acres of woods land was not included in
what is designated in the lease as "hay or pasture

land,'' and his testimony and that of several other witnesses that this woods 'land contained no grass and was grown up with timber, green briars, Spanish needles and beggar's lice, was admissible under the law as tending to prove that the woods land for which plaintiff was claiming $5 per acre rent was not the land mentioned in the lease as ''hay and pasture land.'' Calloway v. Henderson, 130 Mo. 77; Landerdale v. King, 130 Mo. App. 236; Einstein v. Holliday-Klotz Land & L. Co., 132 Mo. App. 82; Laclede Construction Co. v. Moss Tie Co., 185 Mo. 25; Ellis v. Harrison, 104 Mo. 279; Williams v. Railroad, 153 Mo. 534.

ALLEN, J.—Plaintiff leased to defendant a farm, consisting of approximately one hundred thirty-seven and one-half acres of land, by a written instrument of date April 9, 1910, for a term of four years beginning August 1, 1910. It appears that the premises consist of lowlands lying in what is known as Bois Brule Bottom, in Perry county, about a mile from the Mississippi River. The lease, which is a very informal instrument, provides that plaintiff, the party of the first part, rents and leases the farm to the defendant, party of the second part, for the above-mentioned term, ''in consideration hereafter mentioned.'' Then follow these pertinent provisions:

''Second party to pay one-third of the wheat delivered at the elevator. The corn, potatoes, and pasture and hay land the second party is to pay five dollars per acre, oat land at four and one-fourth dollars per acre; all of said rents to be paid on or before the first day of August annually. . . . It is further understood between the parties hereto that in case of overflow or destruction by water, any crops not entirely destroyed one-third on the premises will be required as rent.''

187MoApp42

A further stipulation is to the effect that the lessee will make certain repairs and do other work upon the premises, for the lessor, at seventy-five cents per day.

This action is for cash rents claimed to be due for the first year, from August, 1910, to August, 1911, aggregating $560.48. The answer is a general denial, coupled with which is a counterclaim for $9.84 for labor, and certain small items of materials furnished.

The cause was tried before the court and a jury, and the latter returned the following verdict:

"We, the jury, find the issues in this cause in favor of plaintiff, Margaret A. Morey, and that the defendant, Grover C. Feltz, is indebted to her in the sum of $398, and one-third of the oats, and we assess the costs against the plaintiff."

Thereupon plaintiff's counsel suggested to the court that the verdict should be corrected, and the court told the jury that they could not assess the costs, and had them return to the jury-room to correct their verdict. And thereafter, the jury not reporting promptly, the court sent them a written instruction telling them that they had "nothing to do with the assessment of the costs." Thereupon the jury returned a verdict for plaintiff for $246 "and one-third of the oats." Judgment was entered upon this verdict, and the plaintiff appealed.

The bill of exceptions before us is in the nature of a skeleton bill, with but a brief summary of the testimony adduced. Plaintiff's testimony, in chief, is to the effect that there were seventy-eight and nine-tenths acres of corn land on the farm, seventy acres of which defendant planted in corn, the remainder being left uncultivated; that twenty-six and three-fourths acres were in oats, and one and five-sevenths acres in alfalfa; and that there were nine and three-fourths acres of pasture lands.

Defendant's evidence tended to prove that there was a great amount of rainfall upon the leased premises in the early spring of 1911; that on April 30, 1911, a heavy rain fell, flooding a large portion of the corn land, and destroying nearly all of the oats on a tract consisting of twenty-four and three-fourths acres. Defendant testified that the water stood upon a large portion of the corn land for two or three weeks, rendering the same unfit for cultivation for three weeks, and delaying the planting of his corn. Other witnesses for defendant testified that the water stood on the lower land for a week or ten days. And defendant's evidence is that because of the wet condition of the land the corn was damaged by worms, and that on account of the late planting thereof, it was late in maturing and was injured by frost; that worms and frost destroyed about one-half of the corn. Defendant's testimony is further that the nine and three-fourths acres for which plaintiff claims rent at the rate of $5 per acre, as being pasture land, was uncleared land with neither grass nor water upon it; and testimony of witnesses present at the execution of the lease was admitted to show that this land was not regarded by the parties as pasture land, and that it was not intended that defendant pay rent therefor.

Plaintiff's evidence in rebuttal is to the effect that defendant was not delayed in planting his corn crop by any flooding of the premises; that the water from the rainfall of April 30, 1911, which it is said stood in the "swags or sloughs," ran off in a few days, and that because of the subsequent dry season the best corn was raised in these low places; and that only a small portion of the crop of oats was injured by water. In all eleven instructions were given, and two requested by plaintiff were refused. The questions involved, however, may be disposed of without setting out these instructions.

I. It is clear that the judgment entered upon the final verdict of the jury cannot stand; and this regardless of whether or not that part thereof referring to the oats may be treated as surplusage. The jury may not be permitted to assess the costs against the plaintiff, the prevailing party; and it appears that this is what the jury persisted in attempting to do. Upon finding that the costs could not be assessed against plaintiff in the verdict, the jury proceeded to deduct $152 from the amount which they had previously found to be due plaintiff, thereby evidently attempting to do indirectly that which they could not do directly.

But this is not all. The suit is for such money rent as plaintiff may be entitled to under the terms of the lease; and a verdict of $246 is wholly unresponsive to the issues before the jury. It is apparent from the testimony, and a plat in evidence and before us, that if there be any merit in the defense relative to the rent for the corn land, it affects practically all thereof. While the water in question did not cover all of such land, it does appear that it covered so much thereof, and extended into such different parts thereof, as to affect, if at all, the planting or cultivation of the corn land as a whole. The money rent for the corn land alone, if money rent was due, would amount to more than $246; on the other hand, if defendant was not liable for cash rent for such land, then the recovery could not be so large as this. This verdict is unwarranted under any theory of the case, and plaintiff is entitled to have it set aside. [See Cole v. Armour, 154 Mo. 333, 55 S. W. 476; Witte v. Saling, 171 Mo. App. 574, 154 S. W. 421; Ferd Bauer Engineering & Contracting Co., v. Arctic Ice & Storage Co., 186 Mo. App. 664, — S. W. —.]

II. The defense predicated upon the clause of the lease exempting defendant from the payment of money rent "in case of overflow or destruction by water."

pertains to the corn land and the tract of twenty-four
and three fourth acres of oats. And the question is
whether the flooding of the lands by a heavy rainfall,
such as is said to have occurred, and the damage
claimed to have been occassioned thereby upon the
land devoted to the respective crops last above men-
tioned, falls within the aforesaid exemption.

We think it clear that there was no "overflow"
of the premises, within the meaning of this term in the
lease. The lands in question were "bottom" lands,
not a great way from the Mississippi River, and it ap-
pears that they were subject to overflow from such
river, or from bayous or sloughs connecting there-
with. Evidently it was an "overflow" from this source
that was contracted against in the lease. And an ac-
cumulation of water upon the premises from rainfall
alone does not appear to be within the ordinary mean-
ing of the word "overflow."

Webster defines the verb "overflow" as follows:
"To run or flow over the bounds, as water." The same
author defines the noun "overflow" as: "A flowing
over, as of water or other fluid; an inundation. That
which flows over; either, that which overflows its
ordnary limits; as, the *overflow* of the Nile; or that
which exceeds due bounds." To the same effect are
definitions given by other lexicographers. By the use
of this term it is manifest that the parties had refer-
ence to a rising of the waters of the river or the connect-
ing bayous and sloughs, and a *flowing* or spreading
thereof over the land.

But the language of the lease exempts the lessee
from payment of the cash rentals reserved therein,
in case of overflow *or destruction by water*. It is
argued, in effect, that this has reference only to such
destruction as may be occasioned by water in case of
an overflow, in the proper meaning of that term. There
is some force in this argument; but there would have
been no occasion for using the words italicized above

if the intention was to have the exemption apply only in case of an overflow. The clause should be construed if possible so as to give effect to all the words employed therein. And we think that the expression, "destruction by water," should be held to cover an actual destruction of crops upon the premises by water, though it be by water accumulating from excessive rainfall; and that therefore the jury should be instructed that plaintiff cannot recover cash rent for land, if any, upon which defendant's crop of oats was wholly or partially destroyed by water accumulating and standing upon such land.

But, in our judgment, the provisions of the lease are not such as to exempt defendant from the payment of the stipulated cash rent for the corn land, under the evidence adduced. As there was no "overflow," defendant is not relieved from paying this rent unless, as to such lands, there can be said to have been a "destruction by water," within the terms of the lease. There was no corn crop in existence, and none planted, at the time of the rainfall in question, and hence none was thereby directly destroyed. The defense in this respect is that the soil became very wet from the water which fell and for a time stood upon it, and that this resulted in producing worms that subsequently damaged the corn crop which defendant planted and endeavored to raise; also that defendant was delayed in planting such crop, by reason of the water upon the land, because of which the corn was late in maturing and was injured by frost. But such lossess, if any, under the circumstances appearing, we think do not fall within the term "destruction by water." The alleged indirect cause of such losses appears to be altogether too remote. In our judgment it cannot be gathered from the terms of the lease that the lessee is to be relieved from the payment of money rent because of delay in planting, or an unfavorable condition

of the soil, due alone to excessive rainfall, whatever may result therefrom.

How the matter should be viewed in case of an actual overflow preventing or delaying the planting of a crop, is a question not before us. But, in the absence of an overflow, or of a "destruction" directly caused by water upon the premises, we think that the defendant cannot be relieved from the payment of the cash rents reserved in the lease; and that therefore the trial court should have instructed the jury to the effect that plaintiff was entitled to recover such rent for the corn land.

III. That it was proper to admit the testimony of witnesses as to the declarations of the parties at the time of the execution of the lease, to show what was intended to be included in the term "pasture land," cannot be doubted. While parol contemporaneous evidence is not admissible to vary or contradict the terms of a written instrument, such evidence is admissible to identify the subject-matter of the contract, when this is not definite and clear, in order to reveal the true intent of the parties. From the lease alone it is impossible to tell what is intended to be included within the term "pasture land." And though the parties may not testify as to what was intended (Kessler v. Clayes, 147 Mo. App. l. c. 93, 125 S. W. 799), nor the witnesses state their conclusions, where there is an ambiguity in the instrument, as here, the intention of the parties may be found by proof of the surrounding facts and circumstances and of their own contemporaneous declarations. [See Ellis v. Harrison, et al, 104 Mo. 270, 16 S. W. 198; Laclede Construction Co. v. Tie Co., 185 Mo. 25, 84 S. W. 76; Pulitzer Publishing Co. v. McNichols, 170 Mo. App. 709, 153 S. W. 562; Coffman v. Saline Valley R. Co., 183 Mo. App. 622, 167 S. W. 1053.]

The judgment is reversed and the cause remanded, to be proceeded with in accordance with the views expressed above. *Reynolds, P. J.,* and *Nortoni, J.,* concur.