**ST. LOUIS, KANSAS CITY AND SPRINGFIELD**

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1915.

*(Continued from Volume 189).*

## INTERIOR LINSEED COMPANY, Respondent, v. BECKER-MOORE PAINT COMPANY, Appellant.

### St. Louis Court of Appeals, April 6, 1915.

1. **CONTRACTS: Construction.** In endeavoring to ascertain the true intent of the parties to a contract, courts should look first to the contract itself, and if, after a careful consideration of it and all that appears therefrom, a reasonable doubt still remains, then, and only then, should light be sought elsewhere; and in looking to the contract, the court should not readily yield to any construction that will give to any word, phrase or sentence contained therein no meaning or value whatever, but should, on the other hand, attempt to so harmonize each and every provision as to give some force and effect to all.

2. **SALES: Construction of Contract: Time of Delivery: Parol Evidence.** A written contract for the sale of oil provided "for shipment in carload quantities, as follows, and within ten days of specified dates:  320 barrels, October, etc., buyer to furnish specifications for shipment in ample time to enable seller to execute order within the period or periods named above." The contract was prepared on a blank form used by the seller

in all its contracts, and filled in with the provision "320 barrels, October." *Held*, that the provision "within ten days of specified dates," means the same as if it read "within ten days of specified dates, as follows, to-wit," and permits delivery within ten days after the time therein specified, namely, the month of October, and that such provision does not refer to the dates on which specifications for shipment are to be furnished, since such construction would render the provision for ample time after such specifications were furnished meaningless; *held, further*, that the contract was not ambiguous on its face, and hence extrinsic evidence could not be considered in determining the meaning of such provision; *held, further*, that although the term "date" means a given day of a given month of a given year, nevertheless it is apparent that the parties employed the word "October" in the sense of, and as, the date when delivery was to be made.

*Held*, by ALLEN, J., dissenting, that the word "October," as used in the contract, is not a specified date, but a "period" of time, and that the natural meaning of the term "320 barrels, October" is that that number of barrels were to be delivered in October, provided the buyer furnished shipping directions in time to permit the seller to make delivery on or before the end of that month, as provided by the "ample time" clause; *held, further*, that, in view of the fact that the contract was prepared by the seller upon one of its printed forms, it should be most strongly construed against the seller and any doubt resolved in favor of the buyer, and, in view of the further fact that the vital element of the contract is vaguely expressed by "320 barrels, October" and is by no means entirely definite and clear, parol evidence should have been received to explain its meaning, and that such evidence, offered by the buyer, clearly established that the parties intended that delivery should be made in the month of October, provided the buyer furnished shipping directions in time to permit the seller to make delivery within that month, as provided by the "ample time" clause.

3. **CONTRACTS: Construction: Parol Evidence.** Where a contract is not ambiguous on its face, parol evidence may not be introduced for the purpose of explaining it.

*Held*, by ALLEN, J., dissenting, that if the terms of a contract are susceptible of more than one meaning, so that reasonable men may fairly and honestly differ in the construction thereof, extrinsic evidence, either written or parol, is admissible to resolve such ambiguity, in order to arrive at the true intention of the parties.

4. **DEFINITIONS: "Date."** The term "date" ordinarily means a given day of a given month of a given year.

Appeal from St. Louis City Circuit Court.—*Hon. Rhodes E. Cave,* Judge.

AFFIRMED. CAUSE CERTIFIED TO SUPREME COURT.

*Joseph L. Hornsby* for appellant.

*Chas. A. Powers* and *Sturdevant & Sturdevant* for respondent.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of a breach of contract of sale. Plaintiff recovered and defendant prosecutes the appeal.

The material facts and the conclusions of law thereon are clearly stated and set forth in an opinion of the trial judge, Hon. Rhodes E. Cave, filed at the time of giving judgment in the case in the circuit court. We copy this statement of facts and opinion as accurately reflecting our views on the questions here. Such statement and opinion are as follows:

"There is no controversy as to the facts in this case whatever, and they show that in October, 1911, the defendant by telephone ordered of plaintiff 320 barrels of linseed oil; that on the same day plaintiff confirmed this verbal sale by letter to the defendant, in which the following language is used:

" 'We are pleased to confirm verbal sale made to you to-day of 320 barrels pure linseed oil for *delivery in month of October.'* (The italics in the letters and contract are by the court.)

"Within two or three days thereafter plaintiff mailed to defendant the printed form of contract in evidence as exhibit B, and the same was duly signed by both parties.

"Under this contract portions of the oil were delivered in tank wagons or cooperage at various dates during the month of October, and on October 20 defend-

ant wrote to plaintiff ordering one tank car of oil under this contract, as follows:

" 'Please enter our order for immediate shipment for one tank car, 10,000 gallons raw linseed oil, routing same to us care of the Terminal Railroad Association, Sixteenth street yards, St. Louis, Missouri. This shipment to be applied against our contract *for October delivery.*'

"And on the same day plaintiff acknowledged receipt of this order, using the language,

" '. . . *to be applied against your October contract.* This will go forward to our factory, Minneapolis, Minnesota, where it will have immediate attention.'

"The tank car of oil was not shipped from Minneapolis until October 30.

"On October 31, defendant wrote and advised plaintiff that defendant would refuse to receive the tank car shipment of oil ordered October 20th, unless delivery of same was made October 31, 1911.

"On November 1, 1911, plaintiff delivered to defendant bill of lading for said car, but defendant returned the same on the same day.

"On November 6, the tank car arrived in the city of St. Louis and was ready for delivery to defendant and was tendered to defendant on the 7th day of November, 1911.

"On November 9, plaintiff advised defendant that unless said car was accepted plaintiff would sell the same and hold defendant liable for any loss occasioned thereby.

"Defendant having refused to accept said tank car, plaintiff thereafter sold same for the best price obtainable, to-wit, $6868.40, which said sum was $1392.61 less than the price provided for in the contract. Plaintiff was also put to the expense of demurrage charges of $11 and switching charges of $4 on account of said tank car.

"The real controversy in this case turns upon the construction of the written contract executed by the parties, and unless there is some doubt as to its construction, no reference whatever need be made to the other facts.

"That contract, in so far as its provisions are in any wise material in determining the issues raised, is as follows:

" 'The seller (plaintiff) hereby sells and agrees to deliver and the buyer (defendant) hereby purchases and agrees to receive 320 barrels . . . of pure linseed oil, for shipment in carload quantities, as follows, and within ten days of specified dates:

—— barrels, January;

—— barrels, February, &c.

320 barrels, October,

raw linseed oil at 82 cents, boiled linseed oil at 83 cents per gallon, f. o. b. cars or buyer's factory, St. Louis, Missouri, freight allowed to St. Louis, Missouri; buyer to furnish specifications for shipment *in ample time to enable seller to execute order within the period or periods named above.* In absence of specifications a carrying charge . . . as long as the seller shall be willing to carry the same. . . . Orders for tank cars to be filled by capacity of car convenient to ship, with minimum of about 5000 gallons and maximum of about 10,000 gallons. Minnesota State weights to govern. The whole contract is stated herein.'

"Counsel agree that in our search for the true intent of the parties we should look, first, to the contract itself, and if, after a careful consideration of it and all that appears therefrom, a reasonable doubt still remains, then, and only then, should we seek light elsewhere; and in looking to the contract we should remember that we must look to its each and every provision and to what may be fairly inferred therefrom, and should so construe the whole contract as to give some meaning to each and every part thereof. In a

word, that we should not readily yield to any construction of the contract which will give to any word, phrase or sentence used by the parties no meaning or value whatever; but should, on the other hand, attempt to so harmonize each and every provision as to give some force and effect to all.

"Looking to the contract, then, in this light, the crucial question, as it appears to the court, is, to what do the words of the contract, 'within ten days of specified dates,' refer? Do they refer to the dates thereinafter specified, to-wit, October, or do they refer, as counsel for defendant contends, to the dates on which the buyer may thereafter furnish specifications; and if the latter, then of what use in the contract is the provision that the buyer shall 'furnish specifications in ample time to enable the seller to execute the order within the period or periods above named?'

"If the seller must execute the order within ten days after specifications are given by the buyer, then the 'in ample time' provision has no meaning whatever; and to such a construction we should not, as above stated, yield readily.

"Again, if the parties had intended the phrase 'within ten days of specified dates' to refer to the dates on which specifications were to be given by the buyer, would it not have been more natural to have said, 'within ten days after specifications are given or received?'

"Then, too, the use of the words 'within ten days of specified dates,' followed by a colon and then by certain enumerated dates, is just as if the parties had said, 'within ten days of specified dates, as follows, to-wit:'

"Could there be any doubt as to what this phrase refers to, if the date inserted had been October 31, instead of just 'October?'

"Looking further to the contract, we find that it is a blank form used by the seller in all cases whether

the buyer is located in St. Louis or San Francisco, and it is but reasonable to infer from its provisions that the place from which the seller is to ship is Minnesota.

"This being so, and adopting for the time being defendant's contention that 'execute the order' means delivery in St. Louis, it is most reasonable that the contract should provide for a fixed time, to-wit: 'within ten days of specified dates,' for the execution of the order; and a variable time, to-wit: 'ample time,' depending on all the circumstances of each case, for the giving of specifications by the buyer.

"In short, if we give to the term 'in ample time,' etc., any meaning whatever, it must be, not ten days, but a varying time; and to adopt defendant's contention that 'within ten days of specified dates' refers to the dates when specifications are to be given by the buyer, necessarily robs the 'ample time' provision of all meaning whatever, and cannot therefore be accepted. as a fair construction of the contract.

"This contention to the side, the term 'within ten days of specified dates' can only refer to the date set out in the contract, to-wit: October, and means, in connection therewith, that the seller agrees to sell and deliver within ten days of the specified date, October.

"This being so, and the tender having been made within ten days of October, it would be useless to consider the other questions argued by counsel.

"Upon consideration of the premises, there being no controversy as to the amount the plaintiff is entitled to recover, if at all, judgment will be for the plaintiff in the amount sued for."

In addition to what Judge CAVE has so well said, we will add: It appearing that the contract is not ambiguous on its face, the court very properly excluded from consideration the evidence offered with a view of eliminating the words, "and within ten days of speci-

fied dates," so as to amend it, requiring the delivery to be made during the month of October.

Touching the suggestion that a date means a point of time, it is to be said that, though it means a given day of a given month of a given year, we are not concerned here so much with the technical import of the word as with the true intention of the parties ascertained from the entire instrument. If this appears clear—that is, not shrouded in ambiguity—it is improper to look to extrinsic evidence for aid in interpretation. It appears to be entirely clear to us that the parties employed the word "October" in the sense of and as the date when delivery was to be made and then provided ten days thereafter to accomplish the fact.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* concurs. *Allen, J.,* dissents and deems the judgment of the court in conflict with Laclede Const. Co. v. T. J. Moss Tie Co., 185 Mo. 25, 84 S. W. 76; Ellis v. Harrison, 104 Mo. 270, 16 S. W. 198, and other cases cited in the dissenting opinion. He, therefore requests that the cause be certified to the Supreme Court for final determination, and it is accordingly so ordered.

## DISSENTING OPINION.

ALLEN, J.—I am unable to concur in the opinion of my Brother NORTONI in this case, for reasons which I will undertake to set forth.

On October 14, 1911, defendant, by telephone, ordered of plaintiff 320 barrels of linseed oil. Defendant accepted the order and on the same day confirmed the sale to plaintiff by the following letter:

"We are pleased to confirm verbal sale made to you today of 320 barrels strictly pure linseed oil for delivery in month of October at eighty-two cents per gallon f. o. b. your warehouse or factory, St. Louis,

Missouri, basis raw on cooperage. Tank car delivery two and one-half cents less. Tank wagon delivery two cents less than cooperage.

"Thanking you for your valued order, we beg to remain."

Plaintiff and defendant are both corporations with offices in the city of St. Louis, though it appears that plaintiff kept its main supply of oil at Minneapolis, Minnesota, from which place car shipments were made. After writing the above letter, and evidently on the same day, plaintiff mailed to defendant the contract sued upon, which was signed by defendant through its president and returned by mail to plaintiff. According to the testimony of plaintiff's manager, who represented it throughout the transaction and signed the contract for it, no communications were had with defendant in reference to the sale between the time of the writing of the above letter and the execution of the formal contract. This contract consists of a printed form with certain blank spaces filled in by typewriting. The contract in full is as follows, the typewritten parts thereof appearing in italics, viz.:

"CONTRACT, Made at *St. Louis, Mo.* this *14* day of *October, 1911* between INTERIOR LINSEED COMPANY of St. Louis, Mo., hereinafter called the seller, and *The Becker-Moore Paint Co.* of *St. Louis, Mo.,* hereinafter called the buyer.

"The seller hereby sells and agrees to deliver and the buyer hereby purchases and agrees to receive *320* barrels containing about 50 gallons each (7½ pounds in a gallon) of pure linseed oil, for shipment in carload quantities as follows, and within ten days of specified dates:

| —— | Bbls. January. | —— | Bbls. May. | —— | Bbls. September. |
|---|---|---|---|---|---|
| | | | | *320* | |
| —— | " February. | —— | " June. | —— | " October. |
| —— | " March. | —— | " July. | —— | " November. |
| —— | " April. | —— | " August. | —— | " December. |

"*Tank wagon two cents less and tank car two and one-half cents less than cooperage* raw linseed· oil at *eighty-two* cents, boiled linseed oil at *eighty-three* cents per gallon, f. o. b. cars *or buyer's factory, St. Louis, Mo.* freight allowed to *St. Louis, Mo.* Buyer to furnish specifications for shipment in ample time to enable seller to execute order within the period or periods named above. In absence of specifications a carrying charge is to accrue of one-half cent per gallon per month or any part of the month, as long as seller shall be willing to carry the same.

"Failure to deliver any installment of oil shall not be breach hereof as to other installments.

"Terms: Net cash in thirty days from date of invoice; or, if payment is made in ten days from date of invoice, a discount of one per cent will be allowed.

"In case of default in payment of any installment or purchase money when due, the whole sum owing by the buyer shall become due at once, and further deliveries shall be made only for cash.

"Delay of seller caused by fire, differences with workmen or inevitable accidents excepted.

"Orders for tank cars to be filled by capacity of car convenient to ship with minimum of about 5000 gallons and maximum of about 10,000 gallons. Minnesota State weights to govern.

"Over or under shipment of contract necessitated by car capacity is to be settled at market price on date of last car shipped.

"Special oils at sellers' usual difference.    The whole contract is stated herein.

Accepted THE BECKER-MOORE PAINT CO.,

W.·E. BECKER, Prest.

INTERIOR LINSEED CO.,

By J. R. GINN, Mgr."

Certain portions of the oil thus sold were delivered, in various amounts, in tank wagons or "cooperage," at various dates after October 14 and prior to October 20, 1911.

On the last-mentioned date defendant wrote plaintiff as follows:

"Please enter our order for immediate shipment for *one tank car,* capacity about ten thousand (10,000) gallons raw linseed oil, routing same to us care of the Terminal Railroad Association, 16th street yards, St. Louis, Mo.

"This shipment to be applied against our contract for October delivery.

"Kindly acknowledge receipt, advising about how soon we can expect shipment, obliging."

On the same day plaintiff acknowledged receipt of this order by the following letter, viz.:

"We have your kind favor of this date ordering 10,000 gallons tank car of raw linseed oil, for shipment, care Terminal R. R. Association, St. Louis, Mo. To be applied against your October contract. This will go forward to our factory Minneapolis, Minn., where it will have immediate attention."

The evidence is that the president of defendant company had several conversations with plaintiff's manager subsequent to October 20, and commencing perhaps three or four days thereafter, urging plaintiff to effect delivery of this tank car of oil as quickly as possible. It appears that defendant had resold the oil, and that its purchaser was urging delivery; and that defendant was anxious to make delivery because of the fact that the market had begun to decline. And the evidence is that the market price continued to steadily decline until November 1, and thereafter. It is said that defendant's president received no satisfaction as to when delivery would be made. On October 31 defendant wrote plaintiff that defendant's customer would refuse to receive the tank car of oil unless delivery was made on that day, saying: "You will consequently govern yourself accordingly in your delivery to us. You will note in referring to the date of our

order for this tank car that we gave you the required ten days' notice as provided in your contract forms.''

The tank car of oil was not shipped from Minneapolis until October 30. It appears that it reached St. Louis on November 6, and was tendered to defendant on the following day, to-wit, November 7, 1911. Defendant refused to accept it; and, after notice to defendant, plaintiff sold the oil for the best price obtainable therefor, to-wit, $6868.40, being $1392.61 less than the contract price, and brought this suit to recover the loss thus entailed together with certain demurrage and switching charges.

The crucial question involved is whether the foregoing written contract executed by the parties is free from any uncertainty or ambiguity in its terms, so as to. preclude the consideration of extrinsic evidence as an aid to the construction thereof and to ascertain the true intent of the parties. The learned trial judge, in an opinion filed, which for the most part is adopted by my Brother NORTONI, held that the writing was altogether clear and definite, and that extrinsic evidence, though consisting in part of plaintiff's letter written at the time of the transaction, could not be looked to in construing its terms. The cause was tried before the court without a jury, and though the aforesaid letters, as well as oral testimony relative to the transaction, were admitted in evidence, the court in deciding the case excluded all of the same from consideration. I am persuaded, however, that the learned trial judge, for whose opinion I have great respect, erred in so doing.

The pertinent question is: Can this contract be said to be entirely definite and clear, and free from any ambiguity in its meaning and purport? If its terms are susceptible of more than one meaning, so that reasonable men may fairly and honestly differ in the construction thereof, then extrinsic evidence, either written or parol, is admissible to resolve such ambiguity

in order to arrive at the true intention of the parties. A rule of interpretation, equally well settled, is that the writing should be read in the light of the surrounding circumstances in order the more perfectly to understand and explain the intent and meaning of the parties. [Laclede Construction Co. v. Moss Tie Co., 185 Mo. 1. c. 62, 84 S. W. 76; Williams v. Railroad, 153 Mo. 1. c. 534, 54 S. W. 689; Pulitzer Pub. Co. v. McNichols, 170 Mo. App. 709, 153 S. W. 562.]

"The object of interpretation always is, or should be, to reach the actual intention of the parties. We mean, of course, that intention as expressed in the writing they employ to portray it, and consistent with the latter. When the subject-matter to which such a writing refers is not *entirely definite* and clear, it is permissible, and obviously just, to receive in evidence a description of the circumstances of its execution that the court may be placed, as near as may be, in the situation of the contracting parties with a view the better to adjudge in what sense the language used was probably intended by them." [Swett v. Shumway, 102 Mass. 365; Keller v. Webb, 125 Mass. 88.] "Putting a construction upon a document means ascertaining the meaning of the signs or words made upon it, and their relation to facts. . . . In order to ascertain the relation of the words of a document to facts, every fact may be proved to which it refers, or may have been intended to refer, or which identifies any person or thing mentioned in it." [Laclede Construction Co. v. Moss Tie Co., supra, 1. c. 68; Coffman v. Saline Valley R. R. Co., 183 Mo. App. 622, 167 S. W. 1053; Morey v. Feltz, 187 Mo. App. 650, 173 S. W. 82.]

In the case before us, if one were forced to construe the written contract by an inspection of its terms, without the aid of the evidence excluded from consideration, it appears that the reasonable construction thereof would be quite different from that placed upon it below. The contract provides that the seller sells

and agrees to deliver, and the buyer purchases and agrees to receive 320 barrels of linseed oil, "for shipment in carload quantities as follows, and within ten days of specified dates:" Then follow the months of the year arranged so that the number of barrels of oil to be delivered in one or more thereof may be designated. In front of "October" the figures 320 are inserted. Prices are then stated, followed by the expression, "f. o. b. cars or buyer's factory, St. Louis, Missouri." A further provision is: "Buyer to furnish specifications for shipment in ample time to enable seller to execute order within the period or periods named above."

The construction placed upon the contract below is that "October" is to be taken as a *specified date,* within the meaning of the preceding phrase, "within ten days of specified dates;" and that therefore plaintiff, by the terms of the contract, had all of the remainder of October and the first ten days of November, 1911, in which to make delivery of any of the oil so sold. I do not agree that this is a reasonable interpretation of the contract. In construing its terms it is to be borne in mind that the instrument is one prepared by the seller, whose agents used its printed form prepared and kept on hand by the seller for use upon such occasions, and evidently designed to afford it the largest possible measure of protection in making any such sale. The doctrine of *contra proferentem* therefore applies with much force, and simple justice demands that any doubt in the terms of the instrument be resolved in favor of the buyer.

The position of the phrase "within ten days of specified dates," is to be noted. I do not agree with the learned trial judge that the language used is necessarily to be given the same meaning as though it were "within ten days of specified dates as follows, to-wit:" The form of expression here employed lends support to the view that the words "within ten days

of specified dates" were intended to have application only in the event that *specific dates* for making delivery were in fact inserted below in the printed form, and not a period or periods within which deliveries were to be made. The language preceding this phrase is complete to the effect that a sale of a certain quantity of oil has been made "as follows," i. e., at prices and to be delivered as below indicated. The succeeding words, "and within ten days of specified dates," appear to have been put into the printed form to allow a margin of ten days for delivery in case any precise date be inserted in the blanks below—it being recognized that such specific dates might or might not be inserted. Hence the language is not "the following specified dates," or "specified dates as follows." In other words, the reasonable interpretation of this language, found in such a printed form, seems to be that the seller agrees to deliver within such period or periods as might be designated below in the columns of months; but if in fact in making a sale any *specific date* is inserted, then the seller does not agree to deliver on such precise date, but within ten days thereof.

In the instant case it seems altogether clear that no "specific dates" were inserted to which the phrase in question could apply. The month "October," standing alone, cannot be taken as a date, much less a *specified date,* unless something appears to show that the word was used to mean something which its ordinary use does not imply. A date is "the point of time at which a transaction takes place or is appointed to take place; a given point of time." "Date" means the same in its legal as in its ordinary sense and imports the day of the month, the month and the year; the day of the month being as essential a part of the date as the month or the year. [See Heffner v. Heffner, 48 L. A. Ann. 1088; Succession of Roberts, 49 L. A. Ann. 868; 82 Am. St. Rep. 672; 2 Words and Phrases, 1830.] By

"October," is evidently meant what then remained of October, 1911. But this is in no sense a *specified date*, but a *period of time*. The natural inference is, I think, that there was here no intention to specify any particular date or dates of delivery, but that delivery was to be made within the period named. And later in the contract reference is made to "the period or periods named above."

The words "specified dates" are thus to be regarded not as meaning that dates, as such, are necessarily mentioned or "specified" below, but as being equivalent to the words "such specific dates as may be below mentioned."

Is it reasonable to suppose that there would be any necessity for providing for an additional period of ten days for delivery, where the contract provides for delivery within a certain named period? If the understanding and agreement is that delivery is to be made within a certain period, why should not that period be stated without more? Surely the seller would have no occasion, in good faith, to make provision in its printed form against making delivery within such period as might be plainly stated in the contract, and where the entire length of the period agreed upon may be named. It is quite different, however, if specific dates for deliveries are inserted in the printed form. The seller's main supply of oil was at Minneapolis, though it kept on hand a supply in St. Louis; and it might or might not be found practicable to deliver any particular amount on a precise day named, and hence the safeguard of a ten days' clause would be reasonably necessary for the seller's protection.

This seems to me to be the reasonable construction to be placed upon this vital part of the contract. It ascribes meaning and intendment to all of the language thereof. It is in no way inconsistent with the subsequent clause providing as follows: "Buyer to furnish specifications for shipment in ample time to enable

seller to execute order within the period or periods named above.'' This view of the contract merely means that the seller was here required to deliver during the month of October, 1911, provided that the buyer furnished shipping directions in time to permit the seller to make delivery on or before the end of the month. It cannot be doubted that ample time was given plaintiff in which to make delivery in October. The order for the immediate shipment of this tank car was placed on October 20; and the facts show that this afforded ample time for shipment thereof from Minneapolis for delivery during October. In fact the car was shipped in much less time when the seller saw fit to start it on its journey.

It was contended by appellant below that the ten days' clause meant that the buyer was to give specifications for shipment ten days before delivery could be demanded. It appears from appellant's letter of October 31, 1911, that it so viewed the contract; and this theory was put forward at the trial below. The trial court said, however, as to which I agree, that this would give no effect to the later clause making special provision as to specifications for shipment, i. e., that shipping directions were to be furnished in *ample time*—whatever this might be—to enable the seller to execute the order within the period or periods named. I am satisfied that the contract does not bear the interpretation thus sought to be put upon it, but I think that the reasonable construction of its terms is as above indicated. The trial court's construction makes ''October'' a specified date; whereas in fact it is not a date but a period of time. Such construction, permitting the seller to acquit its obligation by delivery any time within ten days after the end of October, i. e., by November 10, has the effect of reading into the contract ''October 31'' in place of ''October.'' The natural meaning of ''320 '' October'' (the ditto marks mean-

ing barrels) is that 320 barrels are to be delivered in October—qualified by the "ample time" clause which follows.

Some stress is laid upon the fact that unless "October" is to be taken as a specified date then no such date appears to which the term "within ten days of specified dates" could have reference, and effect is therefore not given to this provision of the contract. But the rule that the whole contract should be construed so as to give meaning and effect, if possible, to all parts thereof, is not here applicable in the same way and to the same extent as it would be were the contract one specially drawn to cover this particular sale. Where a printed form is used, as here, many words may be contained therein which do not apply to the particular transaction. Other words are to be found in this instrument which are not utilized in attempting to express the terms of this contract. In such cases it is not so essential that effect be given to every word of the printed form as it is to account for the presence of such words therein, as having a meaning in the connection in which they are used. In the view herein taken of this instrument the presence of the ten-days-provision is accounted for, and meaning given to it, though it is regarded as not intended to apply to this particular transaction, since a period of time, and not any specified date, was named.

The argument is advanced by respondent that the contract merely calls for *shipment* within whatever may be the time specified, and not for delivery within such time. But there is little, if any, room for this argument, for the contract provides for delivery "f. o. b. cars, or buyer's factory, St. Louis, Missouri."

Though the construction above placed upon the formal contract appears to me to be the most natural and reasonable interpretation of its terms, it cannot be doubted, I think, that the time for delivery is obscurely stated and the contract ambiguous in this respect. And

under the circumstances I cannot understand why any court should feel itself compelled to close its eyes to the truth when it is at hand. Whatever ambiguity there may be in the contract, when read alone, at once disappears in the light of the extrinsic evidence adduced to explain it. The letter written by plaintiff on the very day on which the contract is dated shows in unmistakable terms what was the intention of the parties. It confirms the verbal sale to plaintiff, previously made on the same day, of 320 barrels of linseed oil, "for delivery in month of October . . . f. o. b. your (defendant's) warehouse or factory, St. Louis, Mo." There can be no doubt as to the meaning of this language. And, as stated above, the formal contract was executed almost immediately thereafter, with no communications between the parties in the meantime; and it must be presumed that the contract sought to express the true terms of the sale. The later letters passing between the parties tend to confirm this for they refer to defendant's "contract for October delivery," and to its "October contract." It cannot be imagined that a sale *for delivery in October,* or even the expression "October delivery" could mean that the seller had not only all of the remainder of October but one-third of November as well in which to deliver the goods.

The rule for excluding evidence in cases of this character proceeds upon the theory that, where the writing is entirely definite and clear, to permit either party to show that the intention was other than as therein expressed would tend to destroy the value of written contracts. But in my judgment the rule has here no application, but the case appears to clearly fall within the rule authorizing the admission and consideration of extrinsic evidence. Surely this contract, upon a printed form furnished by the seller, which is a strange jumble of words and phrases, wherein a vital element of the contract is vaguely expressed by "320 " October" *is by no means entirely definite and clear.*

For reasons mentioned above, it is to be construed most strongly against the seller, any doubt being resolved in the buyer's favor. I am firmly convinced that a rational construction to be placed upon it is one contrary to plaintiff's contention and which would defeat plaintiff's recovery. On the other hand when once light is shed upon it by the evidence excluded from consideration below, no doubt remains as to the meaning of its terms; for it is then made to appear beyond question that the intention was to provide for delivery at St. Louis within the month of October. Such is the solemn written admission of plaintiff as to the terms of the sale, made at the very time when the transaction took place. And it is a case in which time is of the essence of the contract. It was tried upon that theory below; and manifestly correctly so, for the commodity was one dealt in upon the market and in the price of which a brief period of time may make great difference. And it appears that the market price was declining during the latter part of October and thereafter.

The contemporaneous written declaration and admission of plaintiff in its letter affords altogether satisfactory proof of the intention of the parties. "If evidence of surrounding facts and circumstances is admitted to explain the sense in which the words were used, certainly proof of the declarations of the parties, made at the time of their understanding of them, ought not to be excluded. Such declarations, if satisfactorily established, would seem to be stronger and more conclusive evidence of the intention of the parties than proof of facts and circumstances, since they come more nearly to direct evidence than any to be obtained, whilst the other is but circumstantial." [Laclede Construction Co. v. Moss Tie Co., supra, l. c. 68.]

In this view it was plaintiff, and not defendant, that breached the contract. And to permit plaintiff to recover upon the theory that the extrinsic evidence aforesaid may not be looked to, would, in my judgment,

have the effect in law of perpetrating a fraud upon the defendant.

I am, therefore, of the opinion that plaintiff is not entitled to recover, and that the judgment should be reversed. And as I deem the decision herein contrary to the decision of the Supreme Court in Laclede Construction Co. v. T. J. Moss Tie Co., 185 Mo. 25, 84 S. W. 76, and in Ellis v. Harrison, 104 Mo. 270, 16 S. W. 198, as well as to other decisions of that court, I ask that the case be certified to the Supreme Court for final determination by that tribunal.