Dear Mr. Carnahan:
This is in response to your request for an opinion on the following question:
 Article IV, Section 15, of the Missouri Constitution, and Chapter 30, Section 30.260
RSMo authorize the Treasurer to place state funds in interest-bearing time deposits in "banking institutions" in this state. My question is whether federal savings banks are, under the state constitution and statutes, to be considered "banking institutions", and whether the Treasurer is permitted to make deposits of state moneys in federal savings banks.
For purposes of this opinion, we will assume that the term "federal savings bank" means an association chartered by the Federal Home Loan Bank Board and is interchangeable with the term "federal savings and loan association". 12 U.S.C. § 1462(d) (Supp. 1982). Also, we find it necessary to deal with Missouri chartered savings and loan associations in this opinion.
Article IV, Section 15, Missouri Constitution, provides as follows:
 The state treasurer shall be custodian of all state funds. All revenue collected and moneys received by the state from any source whatsoever shall go promptly into the state treasury, and all interest, income and returns therefrom shall belong to the state. Immediately on receipt thereof the state treasurer shall deposit all moneys in the state treasury to the credit of the state in banking institutions
selected by him and approved by the governor and state auditor, and he shall hold them for the benefit of the respective funds to which they belong and disburse them as provided by law. The state treasurer shall determine by the exercise of his best judgment the amount of state moneys that are not needed for current operating expenses of the state government and shall place all such moneys not needed for payment of the current operating expenses of the state government on time deposit, bearing interest, in banking institutions
in this state selected by the state treasurer and approved by the governor and state auditor or in short term United States government obligations maturing and becoming payable one year or less from the date of issue or in other United States obligations maturing and becoming payable not more than one year from the date of purchase. The investment and deposit of such funds shall be subject to such restrictions and requirements as may be prescribed by law. Banking institutions
in which state funds are deposited shall give security satisfactory to the governor, state auditor and state treasurer for the safekeeping and payment of the deposits and interest thereon pursuant to deposit agreements made with the state treasurer pursuant to law. No duty shall be imposed on the state treasurer by law which is not related to the receipt, investment, custody and disbursement of state funds. [Emphasis added.]
Section 30.230, RSMo 1978, states:
 Immediately upon receipt thereof the state treasurer shall deposit all state moneys in the state treasury to the credit of the state on demand deposit in banking institutions
selected by him and approved by the governor and the state auditor and thereafter withdraw such moneys as authorized by law. [Emphasis added.]
Section 30.260, RSMo 1978, states:
 1. The state treasurer shall determine by the exercise of his best judgment the amount of state moneys that are not needed for current operating expenses of the state government and shall keep on demand deposit in banking institutions in this state selected by him and approved by the governor and state auditor the amount of state moneys which he has so determined are needed for current operating expenses of the state government and disburse the same as authorized by law.
 2. The state treasurer shall place the state moneys which he has determined are not needed for current operations of the state government on time deposit drawing interest in banking institutions in this state selected by him and approved by the governor and the state auditor, or place them in short term United States government obligations maturing and becoming payable one year or less from the date of issue, or in other United States obligations maturing and becoming payable not more than one year from the date of purchase, as he in the exercise of his best judgment determines to be in the best overall interest of the people of the state of Missouri, giving due consideration to (1) the preservation of such state moneys, (2) the comparative yield to be derived therefrom, (3) the effect upon the economy and welfare of the people of Missouri of the removal or withholding from banking institutions in the state of all or some such state moneys and investing same in obligations of the United States government, and (4) all other factors which to him as a prudent state treasurer seem to be relevant to the general public welfare in the light of the circumstances at the time prevailing.
 3. The rate of interest payable by all banking institutions on time deposits of state moneys shall be the same as the average rate paid during the week next preceding the week in which the deposit was made for United States of America treasury bills maturing and becoming payable closest to the time of termination of the deposit, as determined by the state treasurer, adjusted to the nearest one-tenth of a percent; except that the rate shall never exceed the maximum rate of interest which by federal law or regulation a bank which is a member of the Federal Reserve System may from time to time pay on a time deposit of the same size and maturity.
 4. The state treasurer may subscribe for or purchase obligations of the United States government of the character described in subsection 2 of this section which he, in the exercise of his best judgment, believes to be the best for investment of state moneys at the time and which are available to him at a price not in excess of par plus interest accrued to the date of purchase, and in payment therefor may withdrawn moneys from any bank account,
demand or time, maintained by him without having any supporting warrant of the commissioner of administration. The state treasurer may bid on subscriptions for such obligations in accordance with his best judgment. The state treasurer shall provide for the safekeeping of all such obligations so acquired in the same manner that securities pledged to secure the repayment of state moneys deposited in banking institutions are kept by him pursuant to law. The state treasurer may hold any such obligation so acquired by him until its maturity or prior thereto may sell the same as he, in the exercise of his best judgment, deems necessary or advisable for the best interest of the people of the state of Missouri in the light of the circumstances at the time prevailing. The state treasurer may pay all costs and expenses reasonably incurred by him in connection with the subscription, purchase, sale, collection, safekeeping or delivery of all such obligations at any time acquired by him. [Emphasis added.]
See also Section 30.250, RSMo 1978 (regarding state depositary agreements).
In Opinion No. 32, Spainhower, 1976, this office concluded that savings and loan associations were not "banking institutions" for purposes of Article IV, Section 15, Missouri Constitution; Section 30.230, RSMo 1969 (now, RSMo 1978); and Section 30.260, RSMo Supp. 1975 (now, RSMo 1978).
We quote from our 1976 opinion at pages 3-4:
 In construing the language of a constitutional provision, courts generally ascribe to the words employed their plain and ordinary meaning, but technical words or phrases are interpreted according to their technical meaning. Pulitzer Pub. Co. v. McNichols,
153 S.W. 562 (St.L. Ct.App. 1913). Whether the phrase "banking institutions" is construed in its ordinary sense or as a technical phrase, it is the opinion of this office that it cannot be construed to include savings and loan associations.
 "Banking" is defined in Webster's International Dictionary (3rd Edition) as follows:
 "the business of a bank, orig. restricted to money changing and now devoted to taking money on deposit subject to check or draft, loaning money and credit (as by discounting notes and bills), issuing drafts, and any other associated form of general dealing in money or credit."
 One of the salient differences between banks and savings and loan associations is that banks offer checking accounts (take "money on deposit subject to check or draft"), whereas savings and loan associations do not. Thus, the latter do not engage in one of the major activities commonly associated with banks.
 That the people of this state contemplated "bank" in its narrower sense finds further support in the development of what is now Article IV, Section 15 of the Missouri Constitution. This provision derives in part from Article X, Section 15 of the Constitution of 1875, which provided, inter alia, as follows:
 "All moneys now, or at any time hereafter, in the State Treasury, belonging to the State, shall, immediately on receipt thereof, be deposited by the Treasurer to the credit of the State for the benefit of the funds to which they respectively belong, in such bank or banks as he may, . . . select, . . ."
 During the 1943-1944 Constitutional Convention, an amendment was introduced to delete "bank or banks" and to substitute in lieu thereof "banks, trust companies, or other banking institutions." Constitutional Debates, Volume 11, page 3166. The amendment was characterized by its sponsor as a "purely corrective amendment," and it passed.
 For no readily apparent reason, the provision finally adopted in the 1945 Constitution refers only to "banking institutions" rather than "banks, trust companies, or other banking institutions." Although arguably the term "banking institutions" is broader than "bank or banks," which appeared in the 1875 Constitution, the transcript of the Debates reflect no intention to include savings and loan associations within the definition of "banking institutions." Indeed, what little discussion took place demonstrates that the participants in the Convention contemplated only banks and trust companies as state depositories. Constitutional Debates, Volume 11, pages 3172-3173. For these reasons, we conclude that the popular perception of "banking institutions," when the phrase first appeared in the Missouri Constitution, did not encompass savings and loan associations. [Emphasis added.]
This office reaffirms the prior definition of "banking institution" found in our 1976 opinion and just quoted supra.
Additional support for the conclusion in our 1976 opinion was found (1) in the fact that at the time the 1976 opinion was issued savings and loan associations could lend money only for limited purposes; (2) in the fact that Sections 30.230, 30.250, and30.260, RSMo 1969 and Supp. 1975 (now, RSMo 1978), contemplated the deposit of state moneys in demand deposits while savings and loan associations could not accept demand deposits at the time the 1976 opinion was issued; and (3) in the fact that banks and trust companies are regulated by a different division than are savings and loan associations (the Division of Finance in the case of banks and trust companies and the Division of Savings and Loan Supervision in the case of savings and loan associations).
In response to Opinion No. 32, Spainhower, 1976, the General Assembly submitted Senate Joint Resolution No. 19, 1977 Mo. Laws 734, to the People. This resolution proposed an amendment to Article IV, Section 15, Missouri Constitution, to allow the deposit of state funds in savings and loan associations. Senate Joint Resolution No. 19 was defeated at the polls by a vote of 295,849 to 585,052. 1978 Mo. Laws at 1012.
Since the defeat of Senate Joint Resolution No. 19, the nature and powers of savings and loan associations have changed somewhat.
Section 303 of the Depository Institutions Deregulation and Monetary Control Act of 1980, 94 Stat. 132, 146, and Section 706(a) of the Garn-St Germain Depository Institutions Act of 1982,96 Stat. 1469, 1540 [hereinafter sometimes "Garn-St Germain"], amended 12 U.S.C. § 1832 (now, Supp. 1982), relating to NOW accounts, to state the following:
 (a)(1) Notwithstanding any other provision of law but subject to paragraph (2), a depository institution is authorized to permit the owner of a deposit or account on which interest or dividends are paid to make withdrawals by negotiable or transferable instruments for the purpose of making transfers to third parties.
 (2) Paragraph (1) shall apply only with respect to deposits or accounts which consist solely of funds in which the entire beneficial interest is held by one or more individuals or by an organization which is operated primarily for religious, philanthropic, charitable, educational, or other similar purposes and which is not operated for profit, and with respect to deposits of public funds by an officer, employee, or agent of the United States, any State, county, municipality, or political subdivision thereof, the District of Columbia, the Commonwealth of Puerto Rico, American Samoa, Guam, any territory or possession of the United States, or any political subdivision thereof.
 (b) For purposes of this section the term "depository institution" means —
. . .;
 (6) any building and loan association or savings and loan association organized and operated according to the laws of the State in which it is chartered or organized, and, for purposes of this paragraph, the term "State" means any State of the United States, the District of Columbia, any territory of the United States, Puerto Rico, Guam, American Samoa, or the Virgin Islands.
In Opinion No. 72, Mallory, 1981, this office concluded that NOW accounts are not demand deposits; rather, such accounts are savings deposits. Because a sine qua non of a banking institution is the power to accept demand deposits, the ability of savings and loan associations to accept NOW accounts does not transform them into banking institutions.
Section 312 of the Garn-St Germain Depository Institutions Act of 1982, P.L. 97-320, 96 Stat. 1469, 1496, codified at12 U.S.C. § 1464(b) (Supp. 1982), states:
 (1)(A) An association may raise capital in the form of such savings deposits, shares, or other accounts, for fixed, minimum, or indefinite periods of time (all of which are referred to in this section as savings accounts), or in the form of such demand accounts of those persons or organizations that have a business, corporate, commercial, or agricultural loan relationship with the association as are authorized by its charter or by regulations of the Board, and may issue such passbooks, time certificates of deposit, or other evidence of accounts as are so authorized.
 (B) An association may also accept a demand account from itself and may also accept demand accounts from a commercial, corporate, business, or agricultural entity for the sole purpose of effectuating payments thereto by a nonbusiness customer. An association may not pay interest on a demand account. All savings accounts and demand accounts shall have the same priority upon liquidation. Holders of accounts and obligators of an association shall, to such extent as may be provided by its charter or by regulations of the Board, be members of the association, and shall have such voting rights and such other rights as are thereby provided. [Emphasis added.]
Section 1464(b)(1)(A), quoted above, authorizes federally chartered savings and loan associations to accept demand accounts from persons or organizations that have established certain types of loan relationships with a federal association. Federal regulatory explanations and definitions relating to this provision can be found beginning at 48 Fed. Reg. 23032 (May 23, 1983).
S.S.S.B. 464, 1982 Mo. Laws 534, changes Sections 369.144(15) and 369.189, RSMo 1978, to expand the types of accounts Missouri chartered savings and loan associations may accept. Section369.189, RSMo Supp. 1983, states:
 1. An association may accept deposits in any form not prohibited by sections 369.010 to 369.369.
 2. Deposits authorized by this section shall be upon any terms and conditions not prohibited by sections 369.010 to 369.369. Owners of deposits shall be creditors of the association. After April 30, 1982, all accounts in all associations are deposit accounts.
 3. The director of the division of savings and loan supervision is authorized under such rules and regulations as he may prescribe to impose or grant the same restrictions, limitations, prohibitions, conditions, requirements, duties, liabilities, provisions, authorities, powers, rights, options and discretions concerning deposit associations as are from time to time applicable to federal associations under the laws, rules, regulations, orders and decisions applicable to such federal associations.
The Division of Savings and Loan Supervision has promulgated a rule granting Missouri chartered savings and loan associations the authority to accept demand accounts in language similar to that used in Section 312 of the Garn-St Germain Depository Institutions Act of 1982. 4 CSR 260-10.020, 8 Mo. Reg. 22, 45, and 344.
Article III, Section 37, Missouri Constitution, prohibits the General Assembly from contracting or authorizing the contracting of any liabilities of the State of Missouri, with certain exceptions not relevant here. It would appear that the State of Missouri may not enter into a loan from a savings and loan association so as to qualify for a demand deposit in a federally chartered or Missouri chartered savings and loan association, under 12 U.S.C. § 1464(b)(1)(A) or 4 CSR 260-10.020(2). Missouri statutes, especially Section 30.230, RSMo 1978, contemplate the deposit of state funds in demand deposits of banking institutions; the inability of the State to deposit its funds in the demand deposits of savings and loan associations tends to show that such associations are not "banking institutions".
Section 325 of the Garn-St Germain Depository Institutions Act of 1982, P.L. 97-320, 96 Stat. 1469, 1500, codified at12 U.S.C. § 1464(c)(1)(R) (Supp. 1982), authorizes federally chartered savings and loan associations to make:
 Secured or unsecured loans for commercial, corporate, business, or agricultural purposes. No association may make loans to one borrower under the authority provided by this subparagraph in excess of the amount a national bank having an identical total capital and surplus could lend such borrower. The aggregate amount of loans under this paragraph shall not exceed 5 per centum of the assets of a savings and loan association (7 1/2 per centum of the assets of a savings bank) prior to January 1, 1984, or 10 per centum of the assets of a savings and loan association or savings bank thereafter.
The Director of the Division of Savings and Loan Supervision has promulgated a rule authorizing Missouri chartered savings and loan associations loan powers similar to those granted by Section 325 of Garn-St Germain, supra. See 4 CSR 260-8.045, 8 Mo. Reg. 20, 44, and 342.
The limitations on the aggregate amount of commercial, corporate, business, or agricultural loans that savings and loan associations may make show that such associations do not engage in the "general dealing in . . . credit". Opinion No. 32, Spainhower, 1976, at 3 (quoting, Webster's International Dictionary (3rd Edition) (emphasis added). Savings and loan associations are still primarily engaged in the housing credit market. See12 U.S.C. § 1464(a) (Supp. 1982) ("The lending and investment authorities are conferred by this section to provide such institutions the flexibility necessary to maintain their role of providing credit for housing.").
We believe that the provisions of Garn-St Germain and the regulations promulgated by the Division of Savings and Loan Supervision grant federally chartered and Missouri chartered savings and loan associations authority which is similar to the authority possessed by banks. We do not believe, however, as a matter of law, that the transformation is complete for purposes of ArticleIV, Section 15, Missouri Constitution, or Sections 30.230 and30.260, RSMo 1978.
In reaching this conclusion, this office is aware of ArticleXI, Section 13, Missouri Constitution, which states:
 No state bank shall be created, nor shall the state own or be liable for any stock in any corporation, joint stock company, or association for banking purposes.
Assuming, arguendo, that savings and loan associations are considered "banking institutions" or "associations for banking purposes", the issue arises whether the State could deposit its funds in mutual savings and loans. The adjudication of a similar issue was attempted in City of Jackson v. Heritage Savings andLoan Association, 639 S.W.2d 142 (Mo.App. 1982), without a dispositive result. Decisions of other states on whether the deposit of public funds in a mutual savings and loan association is an unauthorized acquisition of "stock" in a private corporation are split. See the cases collected in Nebraska League of Savingsand Loan Associations v. Mathes, 201 Neb. 122, 266 S.W.2d 720 (1978). The construction of Article XI, Section 13, Missouri Constitution, is especially important in light of Section369.194.1, RSMo Supp. 1983, which states in part: "Notwithstanding anything to the contrary, accounts prohibited to a mutual association are prohibited to a capital stock association." Butsee subsection 2 of Section 369.194, RSMo Supp. 1983.
The question you pose is a much, much closer one than it was in 1976. This office cannot, as a matter of policy, undertake in an opinion to accomplish what the People of Missouri overwhelmingly determined was not the proper policy of the State as late as 1978 in their defeat of S.J.P. No. 19. See Gershman InvestmentCorp. v. Danforth, 517 S.W.2d 33 (Mo. banc 1974). That decision lies appropriately with other branches of government and ultimately with the People.
CONCLUSION
It is the opinion of this office that the State Treasurer may not deposit moneys of the state treasury in federally chartered or Missouri chartered savings and loan associations.
Very truly yours,
 JOHN ASHCROFT Attorney General